Barbara A. **OLCOTT**, Plaintiff,

v.

Robert P. **LaFIANDRA**, M.D., David B. Pilcher, M.D., Surgical Associates Foundation, Inc., Robert H. Dorwart, M.D. and Associates In Radiology, Inc., Defendants.

Civ. A. No. 90–66.

United States District Court, D. Vermont.

Feb. 26, 1992.

---

488

Philip D. Saxer, Saxer, Anderson, Wolinsky & Sunshine, Burlington, Vt., for plaintiff.

David L. Cleary, David L. Cleary Associates, P.C., Rutland, Vt., for defendant Robert P. LaFiandra, M.D.

Peter B. Joslin, Theriault & Joslin, P.C., Montpelier, Vt., for defendant Robert H. Dorwart, M.D.

## OPINION AND ORDER

PARKER, Chief Judge.

Plaintiff filed a Complaint against defendants on March 14, 1990, seeking damages for negligence through medical malpractice, lack of informed consent, and breach of express warranty. Two motions are currently ripe for adjudication: defendant LaFiandra's second Motion for Summary Judgment, and defendant Dorwart's Motion for an Order Allowing Independent Vocational Rehabilitation Evaluation.

### Background

The plaintiff's causes of action arose out of a stroke she suffered during a medical procedure performed by defendant Dorwart. Prior to that incident, defendant LaFiandra had treated the plaintiff for neck and shoulder pain, and referred her to defendant Pilcher, a specialist in vascular evaluation for consideration of a possible angiogram.[1] Defendant Pilcher, in consultation with defendant Dorwart, felt that an angiogram was necessary. Based upon the results of that test, Drs. Pilcher and Dorwart determined that a balloon angioplasty[2] was then immediately appropriate. During the performance of the angioplasty on April 30, 1987, plaintiff suffered a stroke, which is the basis for her present case. She alleges that as a proximate result of defendants' negligence, she suffered injuries that she would not otherwise have incurred, including a cerebral vascular accident (stroke) and resulting left hemiparesis as well as associated seizures and permanent disability.

### I. Defendant LaFiandra's Motion for Summary Judgment

■ In her Complaint, plaintiff alleges two counts against defendant LaFiandra.

---

1. An "angiogram" is a roentgenogram, or radiograph, of blood vessels filled with a contrast medium. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 83 (27th ed. 1988).

2. A "balloon angioplasty" is an angiographic procedure for elimination of areas of narrowing in blood vessels, or dilation of a blood vessel by means of a balloon catheter inserted through the skin and through the lumen of the vessel to the site of the narrowing, where the balloon is inflated to flatten plaque against the artery wall. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 84.

First, plaintiff claims that Dr. LaFiandra's conduct relative to her, constituted professional medical negligence, in that he lacked the appropriate degree of knowledge or skill and failed to exercise the degree of care ordinarily exercised by a physician engaged in the same or similar practices under the same or similar circumstances. Second, plaintiff asserts against Dr. LaFiandra that relative to the balloon angioplasty performed on her, the defendant failed to disclose to her alternatives to the operation and the reasonably foreseeable risks and benefits involved.

On July 3, 1991, defendant LaFiandra filed a motion for summary judgment (Paper # 55). Previously, he had filed a similar motion on August 10, 1990 (Paper # 22), which his counsel orally withdrew before this court on October 15, 1990.

Summary judgment should be rendered for the moving party if the court finds that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In considering the motion, the court's responsibility is not to resolve disputed factual issues, but to determine whether there is a genuine issue to be tried. *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The court must draw all reasonable inferences in favor of the non-moving party and only grant summary judgment for the moving party if no reasonable trier of fact could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986); *Knight v. United States Fire Ins., Co.,* 804 F.2d 9, 11 (2d Cir.), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1986). When a party who has the burden of proof at trial, fails to establish an essential element of its cause of action after adequate time for discovery, summary judgment must be granted. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

A. Negligence

As to plaintiff's negligence count against Dr. LaFiandra, plaintiff's injuries allegedly arose from a surgical procedure performed by Drs. Dorwart and Pilcher. Plaintiff relies on a letter from her expert, Dr. Alan Cohen, as well as Dr. Cohen's Affidavit and deposition transcript, in support of her claim that Dr. LaFiandra failed to exercise the degree of medical knowledge and skill required when he diagnosed and treated plaintiff, leading to plaintiff's injury. Plaintiff is correct that Dr. Cohen concluded that Dr. LaFiandra's negligence is based on that defendant's having "got[ten] the train rolling," Cohen depo. at 184. However, Dr. Cohen fails to establish any causative links between Dr. LaFiandra's treatment of plaintiff and her injuries.

Specifically, Dr. Cohen has opined on three occasions that he considers Dr. LaFiandra to be "at fault" in handling plaintiff's case. First, Dr. Cohen wrote in a letter to plaintiff's counsel that Dr. LaFiandra (prior to his referral) failed to request simple x-rays of the area in question or more sophisticated nerve conduction studies, myelography, CT scan, MRI or other examinations that might have elucidated neurologic or musculoskeletal problems as the root of the symptoms. Letter from Alan Cohen, M.D. to attorney Philip Saxer (July 24, 1990). Dr. Cohen further posited that the physical examination of plaintiff performed by Dr. LaFiandra may have been problematic since the physician failed to document the presence of thoracic outlet syndrome. *Id.* Nowhere in the letter, however, does Dr. Cohen draw a connection between Dr. LaFiandra's purported problematic care of plaintiff and the injuries she suffered as a result of the angioplasty performed by Drs. Dorwart and Pilcher.

Secondly, Dr. Cohen states in an Affidavit that Dr. LaFiandra failed to possess the degree of knowledge ordinarily possessed by a reasonable physician in similar circumstances, since he did not order certain x-rays and perform other examinations or tests to determine whether or not musculoskeletal problems were the cause of the patient's difficulty. Affidavit of Alan Cohen, M.D. (Sept. 13, 1990). Dr. Cohen also claims that Dr. LaFiandra did not perform a physical examination that was adequate to rule out the possibility of a thoracic

outlet syndrome. *Id.* Again, Dr. Cohen's Affidavit fails to demonstrate any relationship between Dr. LaFiandra's conduct and plaintiff's injuries.

Finally, Dr. Cohen addressed what he believed to be Dr. LaFiandra's negligence when he was deposed by defense counsel. During the deposition, Dr. Cohen indicated that he found fault with Dr. LaFiandra's conduct as follows: the initial physical examination of plaintiff was "somewhat superficial", the defendant did not give a fair trial of anti-inflammatories, many studies were not ordered that might have been relevant, Dr. LaFiandra failed to get other consults, and he "failed to consider some of the possibilities that could cause similar symptomatology." Cohen depo. at 192–93. As with the correspondence and Affidavit discussed *supra*, Dr. Cohen failed to draw any connection in his deposition between defendant LaFiandra's conduct and plaintiff's injuries, other than to summarily state that plaintiff was the "director of the ship, the referring physician." *Id.* at 191.

In a medical malpractice case such as the one before this court, where the plaintiff's expert indicates that a defendant was negligent, one would normally conclude that there is an issue of fact for the jury so that a summary judgment ruling in defendant's favor would be inappropriate. Yet plaintiff's expert's assertion that he found Dr. LaFiandra's conduct problematic because the defendant served as a sort of catalyst for the angioplasty is insufficient in and of

itself to support an opinion of negligence and causation—especially in the face of other, contrary statements also made by Dr. Cohen. In fact, during his deposition, Dr. Cohen testified that he had "no problem" with Dr. LaFiandra's consult to Drs. Pilcher and Dorwart, Cohen depo. at 151, 182, and that he had no evidence that Dr. LaFiandra was involved in the decision to give the plaintiff angioplasty. *Id.* at 183. Moreover, the plaintiff herself indicated during her deposition that Dr. LaFiandra referred her to Dr. Pilcher only for a "possible" angiogram. Olcott depo. at 77.

■ As a result, despite Dr. Cohen's conclusory correspondence with plaintiff's counsel and his Affidavit; when deposed, he was unable to point to *any* conduct on the part of Dr. LaFiandra which would even raise an inference of negligence in relation to plaintiff's injuries. Although Dr. Cohen did indicate that he probably would have acted differently than Dr. LaFiandra,[3] nowhere in the portions of the deposition provided by the parties does Dr. Cohen draw any etiological connection between Dr. LaFiandra's purported "negligence" and the harm which resulted to plaintiff. "The litigant opposing summary judgment, ... 'may not rest upon *mere conclusory allegations* or denials as a vehicle for obtaining a trial.'" *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (emphasis added) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).[4] The

---

**3.** Specifically, Dr. Cohen testified that:

I think that I would have talked with either an orthopedic surgeon, less likely a neurosurgeon, concerning the complaints of the region because often musculoskeletal disease will be manifested by joint irregularities or abnormalities like spurring. There a number of different findings. And I would have tailored the radiographs to the area of pain since [plaintiff] was tender in a certain clavicular region. . . .

A CT of that area is reasonable, we're not talking a myelogram. A thoracic CT is one way of evaluating it, some exercise and motion studies by, I believe, a physical therapist might be another. And then ... cervical spine films, a plain set of films which were eventually done some time around the angiogram, I would have obtained well before the day of the study and looked at.

Cohen depo. at 64.

**4.** In *Quinn,* the plaintiff had been employed by defendant Syracuse Model Neighborhood Corp. ("SMNC") as the Director of Rehabilitation. When the City of Syracuse, a co-defendant, determined that plaintiff's resignation would be advantageous to it, the City "began a publicity campaign designed to coerce the SMNC Board to fire Quinn." 613 F.2d at 443. The district court granted summary judgment in favor of all defendants, finding that, "at best, Quinn had alleged 'merely' that he 'was discharged ... amid the publicity surrounding a scandal involving missing funds.'" *Id.* at 444. The Court of Appeals reversed the district court's ruling, finding that the plaintiff had fulfilled his obligation of alleging specific facts which demonstrated defendants' misconduct. *Id.* at 445. In contrast, plaintiff Olcott's expert has not made

rule against mere conclusory allegations defeating summary judgment motions extends to cases where an expert makes such assertions. *Abraham v. United States*, 465 F.2d 881, 883 (5th Cir.1972); *Kern v. Tri–State Ins. Co.*, 386 F.2d 754, 756 (8th Cir.1968); *Mendes–Silva v. United States*, 1991 WESTLAW 135090, at *9 (D.D.C. July 12, 1991) (citing *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 673 (D.C.Cir. 1977)).

In this case, no reasonable trier of fact could find in favor of the plaintiff as to the negligence and causation concerning defendant LaFiandra, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), since plaintiff has failed to make any specific factual allegations against Dr. LaFiandra. Because plaintiff's own expert concedes that Dr. LaFiandra's conduct in referring plaintiff to the specialists for a possible angiogram was not negligent, defendant LaFiandra could not reasonably be found negligent as to plaintiff for procedures conducted by Drs. Pilcher and Dorwart. Therefore, defendant LaFiandra's Motion for Summary Judgment as to the negligence count is GRANTED.

### B. Informed Consent

■ Defendant LaFiandra also seeks summary judgment in his favor on plaintiff's second charge. Dr. LaFiandra claims that he was not required to obtain informed consent from plaintiff for the balloon angioplasty which is the subject of the present lawsuit, since he did not perform the surgical procedure. In fact, no reasonable trier of fact could find that it was defendant LaFiandra's duty to obtain plaintiff's informed consent. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Dr. LaFiandra correctly reasons that recovery for lack of informed consent is predicated in part on the failure of the "person providing the professional treatment or diagnosis to disclose to the patient such alternatives there-

to and the reasonably foreseeable risks and benefits involved....," 12 V.S.A. § 1909, and that he did not perform the operation on plaintiff. Plaintiff's expert has also confirmed that it is the responsibility of the physician performing the procedure to ensure the appropriateness of the procedure and obtain informed consent.[5] Accordingly, defendant LaFiandra's Motion for Summary Judgment as to Count II of plaintiff's Complaint relating to informed consent is GRANTED.

### II. *Defendant Dorwart's Motion for an Order Allowing Independent Vocational Rehabilitation Evaluation*

■ On July 15, 1991, defendant Dorwart filed a motion pursuant to Fed. R.Civ.P. 35 for this court to issue an order allowing independent vocational rehabilitation and evaluation of the plaintiff (Paper # 57). Rule 35 provides that when the physical condition of a party is in controversy,

[T]he court in which the action is pending may order the party to submit to a physical or mental examination *by a suitably licensed or certified examiner* .... The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

(emphasis added). The highlighted language of Rule 35 took effect on December 1, 1991. Prior to that time, plaintiff's argument that only physicians and psychologists could perform physical or mental examinations of parties under the rule was accurate. *Acosta v. Tenneco Oil Co.*, 913 F.2d 205, 209 (5th Cir.1990); *Stanislawski v. Upper River Servs., Inc.*, 134 F.R.D. 260, 261 (D.Minn.1991); *Landry v. Green Bay & Western R.R. Co.*, 121 F.R.D. 400, 401 (E.D.Wis.1988); *Soudelier v. Tug Nan*

---

any specific factual allegations which constitute more than "mere conclusory allegations." *Id.*

**5.** Dr. Cohen was asked during his deposition by defendant LaFiandra's counsel whose job it is to obtain informed consent of a patient about to

go through angioplasty. His response was that the responsibility lies in "[t]he operator performing the procedure and/or his resident." Cohen depo. at 181.

492

*Servs., Inc.,* 116 F.R.D. 429, 430 (E.D.La. 1987).

However, the 1991 revision extends the rule to include "other certified or licensed professionals, such as dentists or occupational therapists, who are not physicians or clinical psychologists, but who may be well-qualified to give valuable testimony about the physical or mental condition that is the subject of dispute." Fed.R.Civ.P. 35 advisory committee's notes. The requirement that the examiner be "suitably" licensed or certified directs the court to assess the credentials of the examiner. *Id.*

In the instant case, defendant Dorwart seeks to have plaintiff examined by Michael F. Milne, M.S., director of New England Rehabilitation and Clinical Consultants, Inc. Attached to defendant Dorwart's Supplemental Memorandum of Law (Paper # 64) is a curriculum vitae of the proposed examiner. It seems to this court that based on the evidence presented, Milne is qualified to render a physical examination of plaintiff pursuant to Rule 35. In fact, plaintiff does not contest Milne's qualifications, but rather whether his examination would be appropriate under Rule 35.

Moreover, defendant Dorwart has demonstrated good cause for seeking an examination of plaintiff by Milne. Plaintiff has maintained that she cannot effectively enter the work force due to her injuries that are the subject of this lawsuit, and has thus retained her own rehabilitation expert who will testify to that effect and to plaintiff's future needs. Defendants would be prejudiced if denied the opportunity to have their own expert perform a similar vocational rehabilitation evaluation of plaintiff. Accordingly, defendant Dorwart's motion for an order allowing independent vocational rehabilitation and evaluation of the plaintiff is GRANTED.

## CONCLUSION

Defendant LaFiandra's Motion for Summary Judgment (Paper # 55) is GRANTED.

Defendant Dorwart's Motion for Order Allowing Independent Vocational Rehabilitation Evaluation (Paper # 57) is GRANTED.