**Robert Denison DINGEMAN, Appellant,**

**v.**

**Anne Kelley DINGEMAN, Appellee.**

**No. S–5299.**

Supreme Court of Alaska.

Dec. 23, 1993.

James R. Blair, Bliss Riordan, Fairbanks, for appellant.

Robert C. Erwin, Erwin & Smith, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

*OPINION*

MATTHEWS, Justice.

This appeal concerns the child custody award in the divorce action between Robert Dingeman and Anne Dingeman.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Bob Dingeman and Anne Kelley met in the fall of 1989 when Anne responded to a "singles ad" that Bob placed in the Anchorage Daily News. At the time, Bob resided in Fairbanks and worked as an orthopedic surgeon in his own private practice. Anne resided in Wasilla and was employed as a dispatcher with the Palmer Police Department. After exchanging frequent phone calls, the parties met several weekends in both Fairbanks and Wasilla. The longest meeting was for approximately a week around Christmas 1989. At this time Anne became pregnant.

Anne subsequently moved to Fairbanks in February of 1990 and moved in with Bob and his seventeen-year-old son Matthew from a previous marriage. The couple married on October 1, 1990, two weeks after the birth of their daughter Kristina.

On December 14, 1990, after an argument concerning Matthew's behavior, Anne took Kristina and left the house, driving to Wasilla. Bob had asked Anne to leave, but at trial took the position that he contemplated that she would only be gone for the weekend. However, his request that Anne leave clearly had deeper implications, as Anne asked, according to Bob's account, "Well, is my stuff going to be packed when I get home?" Bob responded, "I don't know."[1] Anne called Bob that night from Wasilla. During the ensuing week, Bob and Anne had a number of telephone conversations. They formerly had plans to travel to San Diego over Christmas to visit with Bob's parents. However, Anne told Bob she was no longer comfortable with this and that she was going to New Hampshire to visit her brother. Anne called Bob's parents from New Hampshire on Christmas Eve and thereafter the parties had a number of telephone discussions, although it was evident that the relationship was steadily deteriorating. Anne remained

1. This was a reference to an incident which occurred in May of 1990 when Anne told Bob that she could not marry him, to which he responded, "Can you be out of the house in 36 hours?" She left immediately. He proceeded to pack her belongings and by the time she returned "fairly late" he had already moved some of them out of the house.

with Kristina in New Hampshire after the holidays and did not return to Alaska until July of 1991.

Both parties filed for divorce in mid-February of 1991. Initially, both parties sought both legal and physical custody of Kristina. At trial Bob modified his position, stating that he wanted joint legal custody and equal physical custody. However, in final argument his counsel again requested sole legal custody and primary physical custody. Following the trial, the superior court granted sole legal custody and primary physical custody of Kristina to Anne with liberal visitation rights to Bob.[2] Bob has appealed.

## II. *DISCUSSION*

### A. Did the Trial Court Err in Awarding Sole Legal Custody and Primary Physical Custody of Kristina to Anne?

The dispute in this appeal centers on the custody of Kristina. We have noted previously that child custody disputes are among the most difficult decisions a trial court must face. A trial court is vested with broad discretion in determining custody. *Julsen v. Julsen,* 741 P.2d 642, 648–49 (Alaska 1987) (citing *McDanold v. McDanold,* 718 P.2d 467, 468 (Alaska 1986)). We reverse a trial court's custody determination "only if ... convinced that the record shows an abuse of discretion or if controlling factual findings are clearly erroneous." *Id.* at 649.

"An abuse of discretion may be found where the trial court considered improper factors, failed to consider statutorily-mandated factors, or improperly weighed certain factors in making its determination." *Id.* A factual finding by the trial court will be found clearly erroneous when we are " 'left with a *definite* and *firm* conviction on the *entire record* that a mistake has been made, even though there may be evidence to support the finding.' " *Brosnan v. Brosnan,* 817 P.2d 478, 480 (Alaska 1991) (quoting *Martens v. Metzgar,* 591 P.2d 541, 544 (Alaska 1979)) (emphasis added). Thus, we do not readily second guess a trial court's custody determination. Rather, we accord substantial deference to its decision and rely on its judgment in close cases when substantial evidence supports both sides.

In determining custody, the trial court considered all of the statutorily-mandated factors set out in AS 25.24.150 and determined that the parties were equal in all factors except subsection (c)(2): the capability and desire of the parent to meet the physical, emotional, mental, religious, and social needs of the child. The court found that "both parents are capable of meeting Kristina's needs ... [but] on balance, Mrs. Dingeman is better suited to meet those needs than is Dr. Dingeman." Bob urges this court to reverse the custody award, arguing that (1) several of the trial court's factual findings are clearly erroneous; and (2) the trial court abused its discretion by considering improper factors in making its decision and giving improper weight to other factors.

#### 1. The trial court's finding that Anne was more capable of meeting Kristina's needs.

The trial court made several statements and findings concerning the parties that pro-

2. The decree grants Bob physical custody of Kristina during the following periods:

a. Every other weekend, for up to four days. Notice of the intended start and end of visitation must be provided at least 72 hours prior to the beginning of such visitation. After Kristina enters school, this visitation may not interfere with her school attendance. If necessary, the timing should be rearranged to correspond with days that Kristina does not go to school, such as in-service days and school holidays.
b. During the summer, one week per year of age, up to a maximum of ten weeks. Notice of the beginning of summer visitation must be given 30 days in advance of the visitation.
c. In alternating years, beginning and continuing in even numbered years, two weeks at Christmas. After Kristina begins school, this period will correspond to her vacation from school.
d. Every other year beginning and continuing in odd numbered years, one week at Thanksgiving. After Kristina begins school, this period will decrease to reflect her actual school vacation.
e. A one week period in the spring, designated 30 days in advance, until Kristina reaches school age. This period shall be her spring vacation after she begins school.
f. Father's Day, even if not in the regular rotation of weekends.

vide the context for the difficult decision the trial court faced. The court discussed the clear animosity between the parents and the fact that such feelings affected their testimony at trial. As a result, "[t]he trial in this case was ugly. Mud was slung and lies were told." The court concluded that "neither side has ownership of the truth and the objective facts.... [Rather the] truth lies somewhere between the parties' perception of reality." After considering the statutorily-mandated factors in light of these findings, the court found that "the only factor which distinguishes between the parents is Anne Dingeman's somewhat greater ability to meet the needs of Kristina." The court based this finding on two specific factors: "(1) Dr. Dingeman's need to dominate in relationships; and (2) Dr. Dingeman's occasional inability to put the needs of Kristina over his needs." Bob argues that neither factor is supported by the evidence.

The record provides sufficient evidence to support the conclusion that Bob tends to dominate in relationships. The court relied on the Child Custody Investigator's opinion, which it found to be supported by the reports of Anne and of Bob's son Matthew, and the report of Dr. Cragan, who conducted a psychological test of Bob for custody purposes. These sources all presented evidence that Bob preferred to be the dominating or controlling individual in a relationship. The trial judge was in a unique position to consider and weigh the testimony of the witnesses, particularly Anne and Bob, and the court gave more credit to Anne's testimony on this issue.[3] The evidence and the record thus support the factual finding of the trial court and the finding is not clearly erroneous.[4]

The court also found "that on occasion, though certainly not consistently, Dr. Dingeman has been unable to separate Kristina's needs from his needs." The court relied on the fact that Bob changed daycare frequently, often kept Kristina in his office during working hours, and did not deal effectively with ear problems Kristina was experiencing. The trial court found that although Bob generally was able to put Kristina's needs first, at times his "ability to recognize Kristina's needs was clouded by his overriding concerns about Mrs. Dingeman attempting to interfere with his custody rights." This finding is supported by the evidence presented at trial and is therefore not clearly erroneous.

2. Is the trial court's finding that neither parent is willing to foster a relationship between Kristina and the other parent clearly erroneous?

The court noted specifically that it had "serious concerns as to either parent's desire or ability to allow the other to have a full relationship with Kristina." The court therefore found that AS 25.24.150(c)(6) did not favor either parent. Bob argues that there is no evidence to support the court's conclusion that he would not foster an open relationship between Kristina and Anne. He

3. Bob argues that the trial court abused its discretion by "disregarding" the testimony of Bob's psychiatrist, Dr. Martino. Dr. Martino testified that Bob was not a controlling individual. In discussing her finding that Bob had a dominating personality that would affect Kristina, the trial court noted that it

> relie[d] less on Dr. Martino's opinion that Dr. Dingeman is not a "controlling" individual. Although Dr. Martino is an eminently qualified psychiatrist, his ability to judge Dr. Dingeman's relationships with others is diminished by the fact that he has received a very one-sided view from an individual who has a very marked desire to look good.

The court, however, did not disregard Dr. Martino's testimony. Rather it relied less on his testimony than it did on the testimony of those who were actually in relationships with Bob—his wife and son. This does not rise to the level of an abuse of discretion.

4. Bob also argues that even if it were true that he is a controlling or dominating individual, the trial court abused its discretion in considering this factor, as no evidence was presented as to how this factor would affect the best interests of Kristina.

The trial court found, however, that Bob is controlling in his relationships in general, and not just in his relationship with Anne. The evidence indicating that Bob was dominating in relationships in general leads to the logical conclusion that that personality trait would carry over into any relationship with his daughter Kristina. Therefore, the trial court did not abuse its discretion in considering how Bob's dominating personality would affect his ability to meet Kristina's needs.

points specifically to the trial court's statement that "[b]ecause of the factual situation, it is more difficult to point to specific examples of Dr. Dingeman's reluctance to allow a full and open relationship."

The trial court's finding is not clearly erroneous, as sufficient factual evidence exists in the record to support the court's finding that the animosity between this couple would not allow either one to encourage a relationship between Kristina and the other parent. Judge Greene concluded that

> the depth of the feelings and the dynamics of the relationship between Anne Dingeman and Robert Dingeman make it impossible for either of them willingly to foster an open and loving frequent relationship between Kristina and the other parent.... [E]ither would obey court orders that were entered, but ... neither is able to do the extra things required to foster an emotional relationship.

Despite the lack of specific factual situations that the court can point to, multiple indications of Bob's feelings towards Anne exist in the record that support the trial court's conclusion. He testified at trial that Anne had a personality disorder which Kristina should not be exposed to, that Anne was irrational, and that he had done nothing wrong to contribute to or cause the breakup of his marriage. He hired private detectives to follow Anne, and taped several of their conversations without her knowledge. Judge Greene admonished Bob at trial for laughing and grimacing while Anne was testifying. After witnessing his demeanor and testimony, in conjunction with the evidence presented, Judge Greene assessed the weight and the credibility of the evidence and found that the feelings between Bob and Anne would prevent Bob from fostering an open relationship between Kristina and Anne.[5]

B. Did the Trial Court Abuse its Discretion in Failing to Order a Psychiatric Examination of Anne Dingeman?

■ On January 13, 1992, Bob filed a motion with the superior court based on Alaska Rule of Civil Procedure 35 requesting that Anne be ordered to undergo psychological testing. The rule provides:

> (a) Order for Examination. When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown....

Alaska R.Civ.P. 35. The court denied the motion, noting that if the Child Custody Investigator requested testing, the court would order the testing. Bob argues that as his affidavit and memorandum in support of the motion "clearly placed the mental condition of Anne Dingeman at issue," the trial court abused its discretion by not ordering the examination. Bob contends that the information in his motion is sufficient to indicate "probable cause to believe that a personality defect exists," and therefore an exam should have been ordered. We disagree.

■ Two pre-requisites must be met before an order may be issued under both the federal[6] and the Alaska rule: (1) that the

5. Bob also argues that the trial court abused its discretion in making the custody determination by failing to give adequate weight to several factors: Anne's moving from Alaska with Kristina for eight months and Anne's allegations that Bob was an alcoholic, used drugs, and physically abused her. The trial court found the alcohol, drug, and physical abuse allegations to be incredible. The record indicates, however, that the trial court considered all these factors and noted them in its decision. As Bob presents no evidence, other than the fact that he did not win custody, to support his claim that the trial court did not properly consider these factors, we cannot find that the trial court abused its discretion.

6. The language of the federal rule is almost identical. As there is no Alaska case law on this issue, we may look to federal law interpreting a similar rule. The federal rule provides in part:

> (a) Order for Examination. When the mental or physical condition (including the blood group) of a party or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown....

mental condition be "in controversy," and (2) that "good cause" exist for the examination.[7] One court has defined these two requirements as follows: "in controversy"—i.e. "directly involved in some material element of the cause of action or a defense"; and "good cause"—"i.e. that the mental state of petitioner, even though 'in controversy,' cannot adequately be evidenced without the assistance of expert medical testimony." *Gasparino v. Murphy,* 352 So.2d 933, 935 (Fla.Dist. App.1977). The United States Supreme Court noted that these two requirements

> are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.... The ability of the movant to obtain the desired information by other means is also relevant.

*Schlagenhauf v. Holder,* 379 U.S. 104, 118, 85 S.Ct. 234, 242–43, 13 L.Ed.2d 152 (1964).

Bob has not met either pre-requisite of Rule 35. It can be argued that the mental health of the parents is always an issue in child custody cases. However, the record provides no evidence other than Bob's conclusory allegations that supports the contention that Anne's mental health is in controversy. The conclusions of a spouse involved in a custody hearing are not sufficient to meet the requirement that the mental health of the party is "in controversy" within the meaning of Rule 35.[8]

Nor did Bob present evidence showing "good cause" for ordering an examination. The requirement of good cause is not just a formality.[9] Rule 35 specifically requires good cause in order to provide some protection for parties subject to the rule. As noted in *Gasparino,* "[d]iscovery of this type is of the most personal and private nature. The potentially negative effects of requiring petitioner to bare his inner self against his wishes are self-evident." *Gasparino,* 352 So.2d at 935. As Bob did not meet either of the pre-requisites of Rule 35, the trial court did not abuse its discretion in refusing to order a psychiatric examination of Anne.[10]

## III. *CONCLUSION*

As evidenced by the fact that the trial court found only one factor differentiating the parents' ability to care for Kristina, this decision was a difficult one for the trial court. The court weighed all the evidence before it and concluded that Kristina's interests were best met by granting sole legal custody to her mother. The factual findings upon which

Fed.R.Civ.P. 35.

7. Some courts have held that the discretion vested in the trial court is so broad that even upon a showing that the condition is in controversy and that good cause exists for the exam, the trial court may still refuse to order the exam. *Coca-Cola Bottling Co. of Puerto Rico v. Negron Torres,* 255 F.2d 149, 153 (1st Cir.1958); *Bucher v. Krause,* 200 F.2d 576, 584 (7th Cir.1952), *cert. denied,* 345 U.S. 997, 73 S.Ct. 1141, 97 L.Ed. 1404 (1953); *Hardy v. Riser,* 309 F.Supp. 1234 (N.D.Miss.1970).

8. *See Brooks v. Brown,* 744 S.W.2d 881, 882 (Mo.App.1988) (conclusory statements and personal testimony of husband in custody case insufficient to place mental health of wife in controversy); *Neuman v. Neuman,* 377 A.2d 393, 399 (D.C.App.1977) (wife's contention that mental examination of husband would be helpful for determining custody insufficient to place mental health of husband in controversy).

9. Examples of cases in which courts have found "good cause" include *Schlagenhauf,* 379 U.S. at 119, 85 S.Ct. at 243 ("plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination...."); *Olcott v. LaFiandra,* 793 F.Supp. 487, 492 (D.Vt.1992) (good cause for physical exam exists where plaintiff alleges she cannot work due to extent of injuries that are the subject of lawsuit); *In Re Marriage of Gove,* 117 Ariz. 324, 572 P.2d 458, 462 (Ariz.App.1977) (good cause for psychiatric exam of mother seeking custody exists where psychiatrist treating her two months previously diagnosed her as manic depressive with paranoic schizophrenic possibilities).

10. Bob also argues that the trial court abused its discretion when it set a six-hour time limit for each side to present its evidence. Without a more specific objection, it is difficult to say the trial court abused its discretion. Bob's general argument that "counsel did not have enough time to prove all that he needed to prove" is insufficient to show an abuse of discretion by the trial court.

this determination was made were not clearly erroneous, and the trial court did not abuse its discretion by considering improper factors or weighing factors improperly in making its custody determination. For these reasons we AFFIRM the decision of the trial court.