NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| KELLY D., | ) |
| | ) Supreme Court No. S-16726 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-17-01010 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| ANTHONY K., | ) AND JUDGMENT* |
| | ) |
| Appellee. | ) No. 1724 – May 29, 2019 |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances:  Kelly D., pro se, Anchorage, Appellant. Andrew J. Fierro, Law Office of Andrew J. Fierro, Inc., Anchorage, for Appellee.

Before:  Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I.    INTRODUCTION

A mother refused to return her daughter to the father's care at the end of regular weekend visitation, as required by a custody order, claiming concerns about the child's safety.  The mother filed a petition for a 20-day domestic violence protective order, which was denied.  The mother did not return the child until two days after the scheduled exchange, after the father had obtained two writs of assistance and a 20-day domestic violence protective order based on the mother's custodial interference.  At a

---

\*        Entered under Alaska Appellate Rule 214.

later hearing, the court granted the father a long-term domestic violence protective order, ordered that the mother undergo a psychological evaluation, and placed restrictions on the mother's visitation. The mother appeals.

We conclude that the superior court did not clearly err in finding that the mother committed custodial interference, a crime of domestic violence, and that it did not abuse its discretion when it ordered the psychological evaluation and limited the mother to supervised visitation. We therefore affirm the superior court's orders.

## II.    FACTS AND PROCEEDINGS

Kelly D. and Anthony K. have a daughter, born in 2008.[1] Under a 2016 custody order, Anthony had "primary physical custody during the school year" and Kelly had custody every other weekend.

In early April 2017, while at Anthony's house, the child gagged on her breakfast drink and vomited. Anthony and his wife, Matrika, kept the child home from school and took her to the doctor in the afternoon. Matrika, a registered nurse, later testified that the child sometimes did not want to eat and that they would give her a fortified beverage "as a replacement meal so that she is getting enough calories."

The child's weekend with Kelly began on Friday, April 7, and she told Kelly about the breakfast incident. Kelly later testified that she "was told [the child] was being physically forced to consume something to the point that she was throwing up." Kelly testified that she emailed Anthony to ask about it and to ask whether he had taken the child to the doctor. Receiving no response, she emailed Anthony on Sunday before the custody exchange and again got no answer. Anthony testified that he had not yet seen Kelly's emails when, with Matrika and their two-year-old, he arrived to pick up his daughter. Kelly came to his truck window to discuss the breakfast incident, the doctor's

---

[1]    We use initials to protect the parties' privacy.

visit, and the child's absence from school. The discussion became heated. Matrika said she had possibly asked too much of the child, which Kelly interpreted as an admission of abuse. Claiming that she was now concerned for her daughter's safety, Kelly took the child and drove away.

Kelly informed the police that she did not believe her daughter was safe with Anthony and that she planned to file a petition for a domestic violence protective order. She testified that she arrived at the courthouse too late that evening to file anything, so she filed a petition the next morning, April 10. A magistrate judge heard Kelly's petition and declined to grant a short-term order.

That same day, Anthony filed an expedited motion in the custody case for the child's return; the next day, April 11, he also filed a petition for a domestic violence protective order against Kelly, alleging custodial interference.[2] That afternoon, in the absence of Judge Patrick J. McKay, who was overseeing the custody case, Judge Eric Aarseth heard Anthony's request to enforce the custody order. Kelly was at the hearing. Judge Aarseth warned her that she could be charged with the crime of custodial interference and repeatedly urged her to disclose the child's whereabouts, but she refused to do so. The judge issued a writ of assistance at 2:35 p.m.

That evening a magistrate judge heard Anthony's petition for a short-term domestic violence restraining order and granted it, finding that Kelly had committed the crime of custodial interference. The magistrate judge issued a second writ of assistance at approximately 7:30 p.m. According to Kelly's later testimony, she decided at this point that she had "exhausted all of [her] remedies" and would "comply with what the order said." She and her mother left the courthouse to retrieve the child, who was with

---

[2]     *See* AS 11.41.320-.330, 18.66.990(3)(A).

other relatives.  Kelly's mother ultimately delivered the child to Anthony at the courthouse at approximately 10:00 p.m.

On May 9 Judge McKay held a hearing on the cross-petitions for long-term domestic violence protective orders.  Kelly, Anthony, and Matrika testified, describing the events from the failed exchange to the child's return to Anthony two days later.  The court declined to find that the child had been in danger in Anthony's care and denied Kelly's request for a long-term protective order.  But it granted Anthony's petition, finding that Kelly had committed the crime of custodial interference.  The court ordered her to undergo a psychological evaluation, limited her to supervised visitation, and scheduled another hearing a few days later to discuss the details of the visitation schedule.

Kelly appeals the court's finding of custodial interference, the order for a psychological evaluation, and the requirement that visitation be supervised.

## III.   STANDARD OF REVIEW

We will reverse the superior court's decision of custody issues only if we are "convinced that the record shows an abuse of discretion or if controlling factual findings are clearly erroneous."[3]  We review the superior court's decision whether to issue an order for a psychological evaluation for abuse of discretion.[4]  On questions of law we apply our independent judgment, adopting "the rule of law that is most persuasive in light of precedent, reason[,] and policy."[5]

---

[3]     *Vachon v. Pugliese*, 931 P.2d 371, 375 (Alaska 1996) (quoting *Gratrix v. Gratrix*, 652 P.2d 76, 79-80 (Alaska 1982)).

[4]     *Dingeman v. Dingeman*, 865 P.2d 94, 98-99 (Alaska 1993).

[5]     *Brooks v. Brooks*, 733 P.2d 1044, 1055 (Alaska 1987) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)).

## IV. DISCUSSION

Kelly raises a number of points on appeal, many of which have been waived by a failure to brief them[6] or are not properly included in this appeal.[7] Three issues remain: (1) whether the superior court properly found custodial interference as the basis for its issuance of the long-term protective order; (2) whether the superior court properly issued an order for a psychological evaluation; and (3) whether the superior court properly restricted Kelly to supervised visitation with her daughter. On all three issues, we conclude that the superior court did not clearly err or abuse its discretion.

### A. The Superior Court Did Not Clearly Err In Finding Custodial Interference.

Kelly first challenges the superior court's finding that she committed custodial interference when she refused to return the child to Anthony's custody at the appointed time or tell him where the child was for two days thereafter. The crime of custodial interference in the second degree requires that a person related to the child, "knowing that the person has no legal right to do so, . . . takes, entices, or keeps that child . . . from a lawful custodian with intent to hold the child . . . for a protracted

---

[6] Kelly listed five issues as points on appeal that she does not discuss in her brief. "[A]s a general matter, issues not briefed or only cursorily briefed are considered waived." *Wright v. Anding*, 390 P.3d 1162, 1175 (Alaska 2017) (quoting *Shearer v. Mundt*, 36 P.3d 1196, 1199 (Alaska 2001)). While "we consider pro se pleadings liberally in an effort to determine what legal claims have been raised," *Toliver v. Alaska State Comm'n for Human Rights*, 279 P.3d 619, 622 (Alaska 2012), "the failure to raise an argument in an opening brief leaves the other party with no notice or opportunity to respond to the argument." *Hymes v. DeRamus*, 222 P.3d 874, 887-88 (Alaska 2010).

[7] Kelly's brief includes challenges to two rulings that were made after the superior court issued the long-term protective order from which she appealed. *See* Alaska R. App. P. 210(a) ("Except as otherwise ordered by the appellate court, the record [on appeal] does not include documents or exhibits filed after, or electronic records or transcripts of proceedings occurring after, the filing date of the notice of appeal.").

period."[8] Kelly argues that her conduct fell short of the crime's statutory elements both because she did not know she had "no legal right" to keep her daughter from Anthony and because she did not do so for the requisite "protracted period."

The superior court's oral remarks made clear its finding that Kelly knew she was violating court orders both when she failed to go through with the scheduled Sunday evening exchange and when she failed to immediately comply with Judge Aarseth's order enforcing the custody schedule:

> I just don't know what in the world would make you think that it would be okay to break *the very clear order of custody*, keep your child out of school for two full days, *and then basically flip off a superior court judge for another eight hours* until you decided it's appropriate to have grandma . . . pick up [the child] and deliver her to the courthouse.

(Emphasis added.) The court continued, "I find that there was custodial interference even before Judge Aarseth's ruling, but it couldn't be any clearer that afterwards you resisted."

Kelly argues that her refusal to return the child to Anthony's custody was appropriate under the circumstances because she was "seeking protection for the child" and "she sought immediate legal intervention." Kelly asserts a necessity defense, which is governed by statute.[9] Under AS 11.41.330(b), the necessity defense does not apply to custodial interference if the defendant held the child for a time exceeding "the shorter

---

[8]    AS 11.41.330(a)(1).

[9]    *See* AS 11.81.320(a) ("Conduct which would otherwise be an offense is justified by reason of necessity to the extent permitted by common law when (1) neither this title nor any other statute defining the offense provides exemptions or defenses dealing with the justification of necessity in the specific situation involved; and (2) a legislative intent to exclude the justification of necessity does not otherwise plainly appear.").

of the following: (1) 24 hours; or (2) the time necessary to report to a police officer or social service agency that the child . . . has been abused, neglected, or is in imminent physical danger." Kelly withheld lawful custody from Anthony for well over 24 hours — from Sunday evening to Tuesday night — and the necessity defense therefore does not apply. And even if the statute allowed consideration of other circumstances in this case, they would not help Kelly. The superior court found that there was no "sufficient, admissible evidence to show" the child was the victim of "any kind of assault or reckless endangerment" based on the breakfast incident, and that Kelly "did absolutely nothing to assuage whatever concerns or fear" for the child's well-being she testified about at the hearing, such as seeking medical assistance.

Kelly relies on *Perrin v. State*[10] for the proposition that whether a defendant charged with custodial interference intended to keep the child for "a protracted period" is a jury question. But *Perrin* is inapt for two reasons. First, the fact-finder in a hearing on a domestic violence petition is the judge, not a jury, and the judge in this case found that the elements of the offense were satisfied.[11] Second, when *Perrin* was decided the necessity defense to custodial interference was not yet addressed by statute; the phrase "protracted period" was undefined, leaving room for the argument that the defendant meant to hold the child only as long as was necessary to protect the child from harm.[12] That is no longer the case, as the legislature has explicitly defined the necessity defense

---

[10] 66 P.3d 21, 26 (Alaska App. 2003).

[11] *See* AS 18.66.100(b) (directing court to schedule hearing on petition for protective order and stating that "[i]f *the court* finds by a preponderance of evidence that the respondent has committed a crime involving domestic violence against the petitioner, . . . the court may order any relief available under (c) of this section" (emphasis added)).

[12] Ch. 69, § 2, SLA 2005 (expressly limiting necessity defense in custodial interference cases).

in this context, stating that it does not apply if the "protracted period" exceeds "the shorter of" 24 hours or the time necessary to report suspected abuse to the authorities.[13]

Kelly also argues that a finding of custodial interference against a former spouse — by definition a crime of domestic violence[14] — requires "a judicial finding that the defendant posed an ongoing danger to the alleged victim," and she asserts that the court in this case found that she "did not pose a threat to the safety of [Anthony] or [her child]." Kelly does not identify where in the record the court made such a finding; in fact it found that Kelly's actions unnecessarily subjected the child to "trauma" and that the protective order was necessary to protect the child from further "emotional harm." Kelly's legal argument is also mistaken; the focus of the custodial interference statute is interference with the lawful custodian's custody rights, not physical danger to the child or the custodian.[15]

---

[13] AS 11.41.330(b); *see* ch. 69, § 2, SLA 2005.

[14] *See* AS 18.66.990(3), (3)(A) (defining a "crime involving domestic violence" to include a crime against the person under AS 11.41 when committed "by a household member against another household member"); AS 11.41.330 (custodial interference); AS 18.66.990(5)(A) (defining former spouses as household members).

[15] *See* AS 11.41.330(a)(1). The cases Kelly cites do not support her argument. For example, in *Williams v. State*, 151 P.3d 460, 462 (Alaska App. 2006), the court of appeals considered a bail statute that prohibited a defendant charged with a crime of domestic violence from returning to the alleged victim's residence while on pretrial release. The court concluded that this application of the statute was unconstitutional given the breadth of Alaska's definition of "a crime involving domestic violence," because there was "a substantial risk that the statute [would] burden the liberty interests of persons who pose no appreciable risk of future violence." *Id.* at 467. The court did not purport to write a "danger" element into all crimes of domestic violence, as Kelly would have it; it simply recognized that some crimes of domestic violence involve that risk, justifying greater burdens on liberty interests, and some do not. *Id.* at 471.

The superior court did not clearly err when it found that Kelly committed custodial interference, a crime of domestic violence that justified its issuance of the long-term domestic violence protective order.

**B.      The Superior Court Did Not Misapply Alaska Civil Rule 35 Or Abuse Its Discretion By Ordering Kelly To Submit To A Psychological Evaluation.**

Kelly also challenges the court's order that she undergo a psychological evaluation as a condition of unsupervised visitation. Under Alaska Civil Rule 35, a court may order a mental examination when "the mental or physical condition . . . of a party . . . is in controversy," though "only on motion for good cause shown."[16] Kelly contends that her mental health was not "in controversy," that Anthony never made the necessary motion or showing of good cause, and that the order was issued "sua sponte without notice or opportunity to respond."

The record shows that the requirements of Rule 35 were met. Kelly's mental health had been "in controversy" for some time. "The mental health of a parent is a proper topic of inquiry at a custody hearing," though "the basis of the custody determination is the best interests of the child and a parent's conduct is relevant only insofar as it has or can be expected to negatively affect the child."[17] Anthony filed a motion in March 2016 asking that Kelly be required to submit to a psychological evaluation. He cited allegations she had made in several petitions for domestic violence protective orders, in which she claimed that because of domestic violence she was "unable to work," "completely incapacitated, physically shaking all day, . . . afraid to

---

[16]      Alaska R. Civ. P. 35(a); *see also Dingeman v. Dingeman*, 865 P.2d 94, 98-99 (Alaska 1993) ("Two pre-requisites must be met before an order may be issued under both the federal and the Alaska rule:  (1) that the mental condition be 'in controversy,' and (2) that 'good cause' exist for the examination." (internal citations omitted)).

[17]      *Morel v. Morel*, 647 P.2d 605, 608 (Alaska 1982) (citations omitted).

leave the house," and sometimes "hysterical." The court made specific findings about Kelly's mental health in the August 2016 custody order, noting her doctor's testimony that she suffered from "narcolepsy and anxiety disorders, both PTSD and panic disorder," and that, among other factors, "the effect of her mental illness, which the court actually observed during a prior hearing, affects her ability to be a satisfactory full-time parent . . . at this time." The court also noted Kelly's doctor's belief that Kelly needed "a thorough psychiatric and psychological evaluation to determine what her true psychological status is and what her diagnosis should be."

The record also does not support Kelly's argument that the court's order for a psychological evaluation was "sua sponte without notice or opportunity to respond." Anthony contended at the May 2017 domestic violence hearing that, "based on [Kelly's] conduct," she had not been receiving "effective mental health treatment," and he asked that the court order a psychiatric evaluation. The court accepted the need for at least a psychological evaluation, making clear that its primary concern in ordering the exam was, appropriately, protecting the child from further trauma caused by Kelly's emotional instability. Kelly, who at the time was represented by an attorney, discussed her ongoing counseling with the court but did not object to the ordered psychological evaluation. At the hearing held two days later to work out the details of supervised visitation, when the court reiterated the evaluation requirement, Kelly again did not object to it; she did ask that the order be "mutual, that [Anthony] take a psych eval as well," but the court responded that it had not seen "any evidence at this point that [it] need[ed] a psych eval on [Anthony]."

The record thus supports the conclusion that Kelly's mental health was at issue; that the ordered psychological evaluation was in response to a motion made orally at the May 2017 hearing; that there was good cause for the ordered evaluation; and that Kelly had the opportunity to object to the evaluation at two successive hearings but did

not do so. We conclude that the superior court's order was proper under Rule 35 and not an abuse of discretion.

C. **The Superior Court Did Not Abuse Its Discretion By Restricting Kelly To Supervised Visitation As A Result Of The Domestic Violence Hearing.**

Kelly also contends that the superior court erred by modifying custody on the basis of the evidence adduced at the hearing on the domestic violence petitions; she contends that she did not have "notice that a permanent modification of custody and an order for a psychological evaluation would result." But the court did not permanently modify custody as a result of the hearing. It stated explicitly that its purpose in setting up supervised visitation was "filling out the custody portion of the long-term [domestic violence protective order]." The court's subsequent written order for a psychological evaluation noted the existence of a pending motion to modify custody and stayed that motion "pending completion of the evaluation," stating that in the meantime "[c]ustody and visitation shall continue as ordered in [the domestic violence proceeding] pending further court order."

Modifying custody and visitation temporarily as a result of proceedings on a domestic violence petition is expressly authorized by statute. Alaska Statute 18.66.100(c)(9) provides that a long-term protective order may "award temporary custody of a minor child to the petitioner and may arrange for visitation with a minor child if the safety of the child and the petitioner can be protected; if visitation is allowed, the court may order visitation under the conditions provided in AS 25.20.061." Alaska Statute 25.20.061 authorizes courts "in proceedings involving domestic violence" to order visitation to "be supervised by another person or agency and under other specified conditions."

The record demonstrates that Kelly had notice of the domestic violence hearing; she attended the hearing, with counsel, and had the opportunity to testify and present other evidence if she wished; and the court acted well within its statutory authority when, as a result of the findings made at the hearing, it modified custody and imposed conditions on Kelly's visitation. We see no abuse of discretion.[18]

## V.     CONCLUSION

The superior court's long-term domestic violence protective order and its order for a psychological evaluation are AFFIRMED.

---

[18]     Kelly also cites AS 25.24.150(k), which provides that "[t]he fact that an abused parent suffers from the effects of the abuse does not constitute a basis for denying custody to the abused parent unless the court finds that the effects of the domestic violence are so severe that they render the parent unable to safely parent the child." But she points to no findings that her mental health issues are the result of abuse.