Gretchen A. CUSACK, Appellant,

v.

John P. CUSACK, Appellee.

No. S–13089.

Supreme Court of Alaska.

March 13, 2009.

G.R. Eschbacher, Anchorage, for Appellant.

Kathleen A. Weeks, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and WINFREE, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

Divorced parents dispute custody of their daughter. The mother appeals the most recent superior court decision (1) awarding sole legal and primary physical custody to the father, (2) authorizing the father to send the daughter to boarding school, and (3) rejecting the mother's request for court-ordered family therapy. Because the court's findings are not clearly erroneous and the court did not abuse its discretion, we affirm.

## II. FACTS AND PROCEEDINGS

John and Gretchen Cusack married in May 1988, and their daughter was born in October 1993. John and Gretchen divorced in December 1998. The post-divorce custody order issued in 2000 by Superior Court Judge Sen K. Tan provided for joint legal custody and for primary physical custody with Gretchen, who was then living in Colorado. The custody order also provided John regular visitation in Alaska.

In August 2003 Judge Tan entered an interim modification order for the daughter to remain in Alaska with John as the primary physical custodian, providing for visitation with Gretchen only in the Anchorage area. The order was precipitated by a letter to the State of Alaska, Division of Family and Youth Services, from two of the daughter's therapists in Colorado. The letter described the daughter's reports of Gretchen's "violent outbursts, often involving physical altercations." The letter also described "physical and verbal outbursts" between Gretchen and John in the daughter's presence and noted that Gretchen "continues to deny to [the daughter] that the couple is divorced."

Judge Tan appointed a new custody investigator and a guardian ad litem for the daughter. The custody investigator, Susan Arth, recommended that John be awarded sole legal custody and primary physical custody and that Gretchen be granted visitation. Arth found problems with each parent, but ultimately concluded that the daughter "desperately wants to be with Father" and it would be "untenable for the child to be forced to remain in a situation where her primary relationship is fraught with stressful conflict." In September 2003 Judge Tan modified the interim order to give John sole legal and primary physical custody of the daughter, with visitation for Gretchen. After a full evidentiary hearing in March 2004, Judge Tan entered a final order mirroring the September 2003 interim order.

In January 2006 Judge Tan appointed a new custody investigator, Pamela Montgomery, to determine whether the visitation schedule should be revised because Gretchen had returned to Alaska from Colorado. Judge Tan subsequently ordered a full custody investigation. Montgomery's initial October 2006 report was critical of both parents. She reported that the daughter described conflicts with Gretchen that "escalate into huge verbal arguments and, at times, physical confrontations." She also reported her own observation of a confrontation between Gretchen and the daughter that came close to physical violence. While also critical of John's loud and occasionally crass behavior, she reported that the daughter "has done well in her father's care."

Montgomery filed another report in May 2007 recommending that the daughter be enrolled "in a residential college-prep boarding school outside of Alaska, and that her in-person contact with her parents be limited to summers and school vacations only." Montgomery alternatively proposed:

> If the Court and parents don't choose to allow [the daughter] to disengage from this custody dispute by attending a boarding school and limiting her contact with both her parents, then it is suggested that [she] spend two weeks with her mother and two weeks with her father during the school year, half of the summer with each parent, alternating winter breaks and alternating spring breaks. During that two week time period, there would be no in-person contact at all between [the daughter] and the other parent, and no telephone contact . . . unless initiated by [the daughter].

In April 2008 Judge Tan ordered that John retain sole legal custody and primary physical custody, including the authority "to send [the daughter] to boarding school for the child's educational, emotional, mental and physical benefit." Judge Tan rejected Gretchen's request for court-ordered family therapy and concluded that Gretchen's visitation rights depended upon whether John chose to send the daughter to boarding school. A visitation schedule was crafted for each alternative.

Gretchen appeals.

## III. STANDARD OF REVIEW

The superior court has broad dis-

cretion in its determination of child custody.[1] We will not set aside a lower court's child custody determination unless its factual findings are clearly erroneous or unless it abused its discretion.[2] We will set aside a lower court's underlying factual findings as clearly erroneous only "when our review of the entire record leaves us 'with a definite and firm conviction that a mistake has been made.'"[3] "In a child custody case, abuse of discretion is established 'if the trial court considered improper factors, or improperly weighted certain factors in making its determination.'"[4]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion by Granting Sole Legal and Primary Physical Custody to John.

#### 1. Consideration of statutory factors and evidence

The superior court considered the modification of an existing award of custody and visitation, an action governed by AS 25.20.110(a).[5] Modification of child custody requires a determination of the best interests of the child by weighing nine factors set out in AS 25.24.150(c).[6] Gretchen concedes that the court considered the eight expressly identified factors in the statute, but argues that the court abused its discretion by not considering other evidence under the ninth "catch-all" provision of the statute.

Gretchen specifically argues that the court should have considered "the need for the mother and child to reunite" and related testimony from Gretchen's family therapist and the custody investigator. Gretchen points to evidence of: (1) the rift between Gretchen and her daughter; (2) the likelihood that a rotating physical custody schedule combined with therapy would help the relationship; and (3) Gretchen's commitment to therapy. Gretchen argues that by not considering this evidence, the court abused its discretion in reaching its determinations.

The superior court's determination of the daughter's best interests included a discus-

1. *Blanton v. Yourkowski*, 180 P.3d 948, 951 (Alaska 2008) (citing *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997)).

2. *Id.; Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008).

3. *Millette*, 177 P.3d at 261 (quoting *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993)).

4. *Id.* (quoting *Gratrix v. Gratrix*, 652 P.2d 76, 80 (Alaska 1982)).

5. AS 25.20.110(a) provides:
 An award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child. If a parent opposes the modification of the award of custody or visitation with the child and the modification is granted, the court shall enter on the record its reason for the modification.

6. *Barrett v. Alguire*, 35 P.3d 1, 6 (Alaska 2001) (holding that after a threshold finding of changed circumstances, the trial court should determine the best interests of the child in deciding whether to modify a custody award). AS 25.24.150(c) sets out the factors to be considered in that determination:
 (1) the physical, emotional, mental, religious, and social needs of the child;
 (2) the capability and desire of each parent to meet these needs;
 (3) the child's preference if the child is of sufficient age and capacity to form a preference;
 (4) the love and affection existing between the child and each parent;
 (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
 (6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;
 (7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
 (8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;
 (9) other factors that the court considers pertinent.

sion of each of the factors specified in the statute. In its discussion of the second factor (each parent's capability and desire to meet the child's needs) the court noted the rift between Gretchen and her daughter, but concluded the testimony of both the custody investigator and Gretchen's therapist suggested that Gretchen and her daughter would be unlikely to achieve a "normal, healthy relationship." The custody investigator testified she was concerned about the potential for conflict—including physical conflict—between Gretchen and her daughter and that conflict might be exacerbated by a rotating physical custody schedule. Gretchen's family therapist testified at length about relationship problems between Gretchen and her daughter. He testified that a two-week rotating physical custody schedule would benefit the relationship, but also testified to "maybe" a fifty-percent chance of success with therapy over a two- to three-year period. Contrary to Gretchen's argument, the court expressly considered the issue Gretchen has raised and therefore did not abuse its discretion by failing to separately consider that issue under the catch-all provision of AS 25.24.150(c)(9).

■ Gretchen also argues that the superior court erred by considering the daughter's custody preference without first determining that the daughter had the capacity to form a preference or specifying how much weight it was giving the daughter's preference. The court did consider the daughter's capacity to form a preference, expressing some doubt about the independence and integrity of the daughter's judgment. But the custody investigator concluded the daughter was mature enough to express a preference, and in 2004 the court had found the daughter was "sufficiently mature to express a preference." If anything, the court's expression of doubt regarding the daughter's judgment suggests that it gave her preference less weight than it otherwise might have. Given the court's previous assessment and the custody investigator's conclusion that the daughter had the capacity to express a preference, it was not

error for the court to consider the daughter's preference.

Gretchen argues that the superior court gave too much weight to the custody investigator's testimony and failed to consider the testimony of the family therapist who had been seeing both Gretchen and her daughter. Gretchen suggests that "when [the custody investigator's] testimony is viewed in the context of the entire trial record," the trial court's reliance on that testimony is "erroneous and ignores the basic needs of a child-parent relationship and its importance." But Gretchen also argues that the superior court "did not follow the recommendations of [the] custody investigator." It is unclear from Gretchen's briefing whether she believes the court gave too much weight to the custody investigator's report and testimony, or insufficient weight.

■ The court did rely heavily upon the findings of the custody investigator, but the record does not suggest the court gave the custody investigator's findings more deference than they were due. The custody investigator spent significant time and energy compiling thorough reports on this family, and the court relied upon these reports because they were the product of a lengthy and impartial investigation. We have noted that a trial court need not credit every witness's testimony equally, "provided that 'the evidence as a whole supports the court's decision.'"[7] Because the evidence supports the court's conclusions, reliance on the custody investigator's findings was not erroneous.

### 2. Legal and primary physical custody

Gretchen argues that the superior court erred in not awarding joint legal custody and that this case should be an exception to the general rule that joint legal custody is inappropriate if the parents cannot communicate effectively. The exception is warranted, Gretchen argues, because much of the fault for the parents' inability to communicate lies with John and because she would otherwise have no input about parenting decisions.

Gretchen claims the court simply ignored the issue of custody and focused on visitation.

**7.** *Chesser v. Chesser–Witmer,* 178 P.3d 1154, 1159 (Alaska 2008) (quoting *Ebertz v. Ebertz,* 113 P.3d 643, 648 (Alaska 2005)).

In fact the court found that changed circumstances supported consideration of a modification to the custody award as well as to the visitation schedule, but ultimately decided that a change of custody was not warranted because "[t]he parents still do not communicate well enough for this court to revisit the issue of legal custody."

■ Both parties acknowledge that joint legal custody requires the parents to be able "to cooperate in the making of decisions regarding a minor child."[8] The parties agree that they "do not have good communication," a conclusion with substantial support in the record. In light of the parents' inability to communicate or to act appropriately with one another and with professionals involved in the daughter's care, awarding sole legal custody to John was not error.[9]

### B. The Superior Court Did Not Abuse Its Discretion by Refusing To Order Family Therapy.

■ Gretchen argues that the superior court abused its discretion when it did not order additional family counseling and instead left the decision to John. The consequence of this decision, Gretchen argues, will be a "de facto severance between mother and child."

We first note there is nothing in the record to indicate that John intends to discontinue or interrupt the daughter's counseling sessions. But there is ample evidence in the record to support a conclusion that family therapy sessions were not working and had minimal chance of success. There is no significant factual support in the record for Gretchen's proposition that failure to order counseling will result in the severance of her relationship with her daughter. Instead the record supports John's assertions that family therapy sessions had not been very successful and, specifically, that nine years of counseling had not much improved Gretchen's

relationship with the daughter. The family therapist estimated that there was "maybe" a fifty-percent chance of success, but others, including the daughter and the prior therapists who had worked with the family, were less optimistic. On this record, it was not an abuse of discretion for the court to conclude that ordering additional family counseling sessions was not advisable.

### C. The Superior Court Did Not Err or Abuse Its Discretion when It Authorized John To Enroll the Child in Boarding School.

■ Gretchen argues that the superior court erred when it entered an order allowing John to send the daughter to an out-of-state boarding school, per the custody investigator's recommendation. Gretchen makes many arguments, but her position can be condensed to these points: (1) the court erred by allowing a third party (a boarding school) to have physical custody of the daughter; and (2) the court erred by limiting Gretchen's access to the daughter. Gretchen also challenges the custody investigator's testimony and recommendation to send the daughter to boarding school.

The superior court identified the primary issue as "whether giving Mr. Cusack the *option* of sending [the daughter] to boarding school implicates the non-party analysis set out in [Alaska precedent]." (Emphasis in original.) The court observed that this was a question of first impression in Alaska and looked to decisions from other jurisdictions. The court noted that:

> In the course of daily affairs, parents leave their children with various caretakers, such as daycare, schools, sports programs, summer camps, babysitters, and friends and relatives. Although such persons have the child and stand *in loco parentis*, they do not have any claim of custody.

The court then concluded that the decision to send the daughter to boarding school should

---

8. *See, e.g., Lone Wolf v. Lone Wolf,* 741 P.2d 1187, 1189 (Alaska 1987) ("[C]ooperation between parents is essential if joint custody is to be in the child's best interest."); *Farrell v. Farrell,* 819 P.2d 896, 899 (Alaska 1991) ("[J]oint legal custody is only appropriate when the parents can cooperate and communicate in the child's best interest.").

9. Gretchen alternatively argues that she should have been awarded sole legal custody, at least during the periods in which she is to have physical custody. But as noted above, the record supports the decision to maintain full legal custody with John.

rest with the "sole legal custodian and primary physical custodian"—John—and issued a custody order providing alternative visitation guidelines if the daughter went to a boarding school or if she remained in Anchorage.

 The first question presented to us is whether placing a child in boarding school is the equivalent of giving custody to a third party. In *Evans v. McTaggart* we emphasized that a court must not grant custody to a non-parent absent clear evidence "that a parent is unfit or that his or her custody is clearly detrimental."[10] We agree with the superior court that merely sending a child to boarding school does not confer legal or physical custody on the school and does not implicate the considerations of *Evans.*

This does not end the inquiry, as Gretchen also claims that allowing John to send the daughter to an out-of-state boarding school "imposes an other than normal and usual visitation schedule with the child that is severely restrictive and close to supervised visitation." Although Gretchen would see less of her daughter if she goes to a boarding school, half of her summer and other vacations would still be spent with Gretchen. Other than the opinion of a single therapist, Gretchen offered no evidence that this schedule would be detrimental to her relationship with her daughter. On the other hand, the record is filled with evidence suggesting that time spent apart from her parents will benefit the daughter and will ease the way to a healthier relationship with both parents. The court did not abuse its discretion by determining that the separation imposed by boarding school would be in the best interests of the child and fashioning an accommodating visitation schedule.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the superior court's decision in its entirety.

CARPENETI, Justice, not participating.

---

10. *Evans v. McTaggart,* 88 P.3d 1078, 1085 (Alaska 2004).