NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KRISTI N., | ) | |
| | ) | Supreme Court No. S-15525 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-09-06511 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| CHRISTOPHER R., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1572 – March 9, 2016 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Kristi N., pro se, Anchorage, Appellant. Curtis W. Patteson, Law Offices of Curtis W. Patteson, LLC, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

## I.    INTRODUCTION

When Kristi N.[1] and Christopher R. dissolved their marriage, the superior court ordered that they share physical and legal custody of their son. Several years later, both parents sought sole legal and primary physical custody of the child. At the custody hearing, Kristi alleged that Christopher had emotionally and physically abused her.

---

\*        Entered under Alaska Appellate Rule 214.

[1]       We use initials in lieu of the parties' last names to protect the family's privacy.

Christopher denied Kristi's allegations. But though the superior court attempted to guide her testimony to elicit relevant facts and extended the evidentiary hearing to a second day, providing additional time for Kristi to gather evidence and prepare her case, Kristi was unable to provide any specific example to support her general allegation of abuse. The superior court found that Kristi failed to prove domestic violence by a preponderance of the evidence and concluded that it was in the child's best interest for Christopher to have sole legal and primary physical custody of their son.

Kristi appeals, arguing that the superior court erred in its failure to make a finding of domestic violence and that the superior court should have applied the statutory rebuttable presumption against awarding custody to a parent who has a history of perpetrating domestic violence. She also objects to several of the court's procedural decisions, arguing that she had insufficient time to present her case, that her testimony was interrupted by the trial judge, and that despite her late request, the superior court should have ordered full psychological evaluations of Christopher, herself, and their son. We affirm the superior court in all respects.

II.    **FACTS AND PROCEEDINGS**

Christopher R. and Kristi N. married in 1999. In 2002 the couple had a son. They separated in 2008 and dissolved their marriage in 2009. The child custody order entered in conjunction with Christopher and Kristi's dissolution agreement provided for shared physical and legal custody of their child.

In May 2012 Kristi sought a domestic violence protective order against Christopher. The superior court rejected the request, denying the ex parte and long-term protective orders.

## A. The 2012 Visitation Modification

In November 2012 Kristi requested a fixed visitation schedule of alternating weeks, and she suggested that the court choose Sunday for the weekly custody transfer day. Christopher preferred to transfer custody on Fridays because he believed that their son benefited from using the weekend as an adjustment period before the school week. The superior court agreed with Christopher and established Friday as the transfer day.

## B. The 2013 Custody Modification Order

In June 2013 Kristi moved for sole legal and primary physical custody of their son. Christopher opposed Kristi's motion and filed a cross-motion for sole legal and primary physical custody. The superior court appointed a custody investigator to file a report with custody and visitation recommendations.

### 1. The custody investigation report

Kristi conveyed to the child custody investigator that Christopher "verbally, emotionally, and mentally abus[ed]" her. Kristi reported that she "lived in fear" while she was married to Christopher and that she believed "[t]he only way she could get out of the marriage was to agree to 50/50 custody, even though it was not what she wanted." Kristi conceded that "[she] has not seen [Christopher] directly hurt [their son], but . . . knows it is occurring."

Christopher gave the custody investigator a dramatically different account. Christopher indicated that he had "never raised a hand" to Kristi. Christopher also reported that their son had complained of Kristi "slapping him, spanking him with a belt and yelling at him for what he felt were minor offenses." He characterized Kristi as inflexible and unsupportive of their son's interests and desires. The custody investigation report reflects that Christopher requested physical and legal custody because he believed that he could offer a more supportive environment that would benefit their son.

The child, who was 11 years old at the time of the custody investigation, reported to the custody investigator that he feels "closer to and more comfortable with [Christopher]" and "is less comfortable with [Kristi] and enjoys his time at her house less." When asked about his preferences, the child indicated that he preferred custody schedules that would involve "significantly more time with [Christopher]." Because the custody investigator found the child to be "reasonably mature for his age and thoughtful," she concluded that "his preference warrants serious consideration."

While acknowledging that "[Kristi] believes she was mistreated in the marriage and after" and that she reported that she had been the victim of mental, verbal, and emotional abuse, the custody investigator noted that "[Kristi] is unable to offer many specific examples of how [Christopher] abused her and the few examples she does offer do not make sense or paint [Christopher] in a negative light." As a result, the custody investigator determined that "there is not sufficient evidence to warrant custody recommendations based on [Kristi's] allegations of abuse."

Based on the son's desire to spend more time with Christopher and the lack of evidence to suggest that Christopher was abusive or controlling, the custody investigator recommended that Christopher be awarded sole legal and primary physical custody of the child.

### 2. The December 2013 evidentiary hearings

The superior court heard testimony from Kristi and Christopher, as well as Christopher's fiancée, at evidentiary hearings on December 2 and December 20, 2013. At the December 2 hearing, Kristi had difficulty explaining how Christopher had been abusive. The superior court repeatedly tried to guide and direct Kristi to provide specific allegations of abuse, but Kristi mostly offered conclusory statements, accusing Christopher of "lying" and "manipulat[ing]," without providing specific examples to support her allegations. The superior court asked Kristi to "[g]ive . . . one example [of

abuse]. Start with one example. Your best example. The most extreme example [of abuse] you can think of." Kristi responded, "It's all tied together. . . . [T]hat's why it's abuse because it continues to compound. Lies. I guess lies." And when asked to provide an example of a lie Christopher had told, Kristi identified emails sent in July 2012. But she conceded, "I'm not saying that when he wrote it on [July 5] that that was a lie. Or that when he wrote it on [July 13] that was a lie." Pressed for further examples of abuse or manipulation, Kristi expressed dissatisfaction with Christopher's efforts to convince her to allow their son to transfer from one middle school in Anchorage to another in Wasilla. Kristi asserted that Christopher "manipulated the situation." But the text of the relevant emails suggests that Christopher had asked Kristi to discuss their son's schooling situation and that, after a period of non-communication, Kristi unilaterally decided to keep their son enrolled at the Anchorage school.

The superior court repeatedly asked Kristi for examples of manipulative or abusive behavior. Kristi asserted that communication with Christopher had been difficult during the marriage and through the dissolution; she recounted that he would sometimes yell and prematurely cut off conversations.

Kristi also admitted that she had tried to spank their child with a belt. The custody investigation report conveyed the child's account that Kristi had a practice of "slapping him, spanking him with a belt and yelling at him for what he felt were minor offenses," and Christopher testified that he was concerned about Kristi's use of corporal punishment.

Christopher testified that he feared Kristi would cut their son off entirely from Christopher's side of the family if she were awarded primary physical custody. And Christopher denied being "verbally, emotionally, or mentally abusive in any way shape or form." Christopher's fiancée testified that she had never witnessed any

incidents in which Christopher had been controlling or manipulative and had never witnessed Christopher commit any acts of emotional, mental, or physical abuse.

At Kristi's request, the superior court scheduled a second hearing for December 20 to allow her to present additional testimony. At the December 20 hearing, Kristi alleged that Christopher sexually assaulted her during their marriage by forcing her to perform oral sex, that Christopher openly watched pornography in the home while their son was present, and that Christopher called her names and tried to control what she wore. She also testified that she believed that Christopher was currently abusing their son and that Christopher's fiancée "doesn't yet know about [the abuse]."

At the December 20 hearing, Kristi for the first time requested that the court order psychological evaluations of their son, Christopher, and herself. She also asked that the court schedule another hearing in order to provide more time for her to offer testimony because she hadn't "even begun to itemize all of the things that [she] would like to share with [the court]." The superior court denied Kristi's requests for the psychological evaluations and a third evidentiary hearing, explaining that it wished to avoid issuing an order that would require the child to switch schools midway through the year. Following closing arguments the court indicated that it would make a written determination "far enough in advance of the beginning of the school year so that arrangements can be made to either keep him at [his current school] or to move him to some other school."

### 3. The superior court's final custody determination

In its written custody order the superior court awarded sole legal and primary physical custody of the child to Christopher. In a supplemental order the superior court elaborated on its reasoning. Among other things, the court found that the child's "normal developmental needs" would be stunted if Kristi had primary physical custody. The superior court found that the child "does not express any concern about

[Christopher] and feels enriched by the dynamism of [Christopher's fiancée]'s extended family" and concluded that the child "is mature enough that his expressed preference is entitled to some weight." The court also found that Christopher would allow their son to have a relationship with Kristi but that Kristi would restrict or eliminate the child's involvement with his father. Finally, the superior court concluded that Kristi's allegations of abuse had not been proved by a preponderance of the evidence because "she was unable to provide examples of or details about [Christopher's] alleged behavior to the [child custody] investigator or during her lengthy testimony."

## C.    Kristi's Post-Trial Motions

Kristi filed a motion for reconsideration of the superior court's order, which the court denied. Kristi also filed a "motion for clarification," in which she requested that the court order Christopher to pay half of their son's day care expenses while the child was living with her during the summer, and that the court make the entire case file confidential. The superior court denied Kristi's first request but agreed to limit access to the court file, noting that it was "a reasonable request designed to protect [the child's] privacy."

Kristi then filed another motion requesting reconsideration of the superior court's denial of her initial motion for reconsideration. She also moved for clarification of the original denial. The superior court clarified that as a procedural matter, Kristi's initial reconsideration motion had not been filed within ten days of the court's custody decision. The superior court also explained that it would have denied Kristi's reconsideration motion even if it had been timely filed because the court had given Kristi "more than adequate time to explain her positions" but ultimately disagreed with Kristi's allegations that Christopher was a threat to their son.

On appeal, Kristi argues that the superior court erred in its failure to make a finding of domestic violence and that the superior court should have applied the

statutory rebuttable presumption against awarding custody to a parent who has a history of perpetrating domestic violence. She also contends that she had insufficient time to present her case, objecting to what she described as the trial court's continual "interrupt[ion] [of her] testimony with questions." She further argues that it was error for the superior court to deny her request for psychological evaluations.

## III. STANDARDS OF REVIEW

"The superior court has broad discretion in its determinations of child custody. We will not set aside the superior court's child custody determination unless its factual findings are clearly erroneous or it abused its discretion."[2] A factual finding is clearly erroneous when "our review of the entire record leaves us 'with a definite and firm conviction that a mistake has been made.' "[3] "The trial court's factual findings enjoy particular deference when they are based 'primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence.' "[4] There is an abuse of discretion in a child custody case "if the trial court considered improper factors or improperly weighed certain factors in making its determination."[5]

---

[2]     *Limeres v. Limeres*, 320 P.3d 291, 295-96 (Alaska 2014) (citing *Cusack v. Cusack*, 202 P.3d 1156, 1158 (Alaska 2009)).

[3]     *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008) (quoting *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993)).

[4]     *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011) (quoting *Josephine B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 174 P.3d 217, 222 (Alaska 2007)).

[5]     *Limeres*, 320 P.3d at 296 (citing *Cusack*, 202 P.3d at 1158).

## IV.    DISCUSSION

### A.    The Superior Court Did Not Err In Declining To Apply The Statutory Rebuttable Presumption In Making Its Custody Determination.

Alaska Statute 25.24.150(c)(7) requires the superior court to consider "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents" in making a custody determination.  If the superior court finds that a parent has a "history of perpetrating domestic violence," then AS 25.24.150(g) creates a "rebuttable presumption" that the perpetrating parent may not be awarded physical or legal custody.  A history of domestic violence exists "if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent has engaged in more than one incident of domestic violence."[6]

The superior court concluded that Kristi had failed to prove her allegations of abuse.  As the superior court noted, Christopher and Kristi "have profoundly different views of their relationship."  Although Kristi repeatedly alleged that she had been the victim of abuse, she presented scant evidence to prove those allegations, despite the court's repeated efforts to elicit examples of specific conduct that she considered abusive.  Kristi had also been unable to provide specific examples to the custody investigator, who concluded that "there is not sufficient evidence to warrant custody recommendations based on [Kristi's] allegations of abuse."  "[W]e do not reweigh the evidence or reassess the trial court's determinations of witness credibility,"[7] and we conclude that the superior court did not err in holding that Kristi had not met her

---

[6]    AS 25.24.150(h).

[7]    *Harris v. Governale*, 311 P.3d 1052, 1057 (Alaska 2013) (citing *Pam R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 185 P.3d 67, 71 (Alaska 2008)).

evidentiary burden. And "[a]bsent a finding . . . [of] domestic violence[,] . . . there [can be] no *history* of domestic violence which would require application of the presumption against custody in AS 25.24.150(g)."[8] Thus, we reject Kristi's argument that the superior court erred by failing to apply the statutory presumption in AS 25.24.150(g) against Christopher in making its custody determination.

**B.      The Superior Court Did Not Otherwise Abuse Its Discretion In Its Consideration Of The Relevant Statutory Factors Under AS 25.24.150(c).**

Alaska Statute 25.24.150(c) requires courts to "determine custody in accordance with the best interests of the child under AS 25.20.060-25.20.130." The statute sets out factors for trial courts to consider when making a best-interests determination:

> (1)      the physical, emotional, mental, religious, and social needs of the child;
>
> (2)      the capability and desire of each parent to meet these needs;
>
> (3)      the child's preference if the child is of sufficient age and capacity to form a preference;
>
> (4)      the love and affection existing between the child and each parent;
>
> (5)      the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
>
> (6)      the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in

---

[8]      *Id.* (emphasis in original).

domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.[9]

"While the 'court cannot assign disproportionate weight to particular factors while ignoring others, it has considerable discretion in determining the importance of each statutory factor in the context of a specific case and is not required to weigh the factors equally.' "[10]

In its final custody order, the superior court awarded sole legal and primary physical custody of the child to Christopher. The superior court found that an award of primary physical custody to Kristi would "stunt" the child's "normal developmental needs." The court noted that the child "[did] not express any concern about [Christopher] and feels enriched by the dynamism of [his fiancée]'s extended family." The superior court concluded that the child "is mature enough that his expressed preference is entitled to some weight." This finding was supported by the custody investigator's report that the child preferred to live with Christopher because the child "feels closer to and more comfortable with [Christopher]. . . . He is less comfortable with [Kristi] and enjoys his time at her house less." The custody investigator also concluded

---

**9**    AS 25.24.150(c).

**10**    *Andrea C. v. Marcus K.*, 355 P.3d 521, 528 (Alaska 2015) (quoting *Williams v. Barbee*, 243 P.3d 995, 1005 (Alaska 2010)).

that the child "is reasonably mature for his age and thoughtful" and that "his preference warrants serious consideration."

The superior court also found that Christopher would foster their son's relationship with Kristi, but that Kristi would "restrict [Christopher's] involvement with [the child], if not cut [Christopher] out of [their son]'s life altogether." Finally, the court noted that Kristi "contends [Christopher] was emotionally controlling and abusive during the marriage" and recognized that Kristi "made these claims to the custody investigator and to the [c]ourt." But the superior court concluded that Kristi "did not prove her allegations by a preponderance of the evidence" because "she was unable to provide examples of or details about [Christopher's] alleged behavior to the investigator or during her lengthy testimony." The court found that the other statutory factors were not germane to its custody determination.

The record provides support for the superior court's findings, and these findings are not clearly erroneous. We conclude that the superior court did not abuse its discretion in deciding to award sole legal and primary physical custody to Christopher.

**C.    The Superior Court Did Not Commit Procedural Error.**

Kristi also makes several claims related to the superior court's procedural approach to the evidentiary hearing. First, she argues that she should have been given more time to make her case, claiming that her testimony "was cut short and redirected" such that she felt she was "triggered" and was reliving her past abuse. Second, she argues that the trial court abused its discretion by asking too many questions from the bench during her testimony and that these questions impacted her adversely because of

her history as a victim of domestic abuse.  Finally, she argues that the superior court should have ordered psychological evaluations of herself, Christopher, and their son.[11]

### 1. The superior court gave Kristi sufficient opportunity to present her case.

Under Alaska Evidence Rule 611(a), the superior court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence," in order to "make the interrogation and presentation effective for the ascertainment of the truth" and to "avoid needless consumption of time."  Kristi has not demonstrated that the superior court unreasonably limited her time or that it was unreasonable for the trial court to ask her questions in an attempt to guide her testimony to relevant topics.  To the contrary, the superior court allowed Kristi ample time to offer her testimony.  During the December 2 hearing, the court asked Kristi whether she needed more time, stating "I can give you another 20 minutes if you'd like right now."  But Kristi wanted an additional two weeks to prepare testimony, so the superior court accommodated that request and scheduled a second hearing 18 days later.

The superior court was also reasonable in its efforts to aid Kristi in making use of the time allotted by helping her organize a presentation that the trial court characterized as "scattered."  When the trial court asked Kristi questions about her

---

[11] Kristi's argument that she should have been permitted to read her testimony was not briefed and therefore will not be considered as part of her appeal.  *See Hagan v. Strobel*, 353 P.3d 799, 805 (Alaska 2015) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal.").  Kristi also argues on appeal that the superior court abused its discretion because the court "did not accept" testimony from a witness she hoped to call.  But her claim is inaccurate; Kristi did not actually attempt to call her witness at trial.  She merely hinted that she would call a witness in the future if the court were to grant her request for a third evidentiary hearing.  Because the superior court never took any action to preclude Kristi from calling her witness during the first or second evidentiary hearings, it did not abuse its discretion.

allegations of domestic violence, it was in an effort to focus her testimony on information that would be relevant to the custody matter. Kristi argues that her emotional trauma was once again "triggered" by the trial court's questions, but Kristi was also unable to supply details of the alleged abuse to the child custody investigator in a more informal context outside the courtroom. And the trial court made a number of efforts to accommodate Kristi. Not only did it acquiesce to her request that the court schedule another evidentiary hearing, it also provided breaks in testimony so she could gather her thoughts, relaxed evidentiary standards so she could convey her case, and allowed Kristi to testify for lengthy stretches of time without interruption.

These actions fall squarely within the superior court's responsibility under Rule 611(a) to "exercise reasonable control" over the proceedings in order to allow "presentation effective for the ascertainment of the truth . . . [and] avoid needless consumption of time."[12] There is no error in the superior court's conduct during the evidentiary hearing.

2. **It was not error for the superior court to deny Kristi's request for psychological evaluations.**

Finally, Kristi takes issue with the superior court's denial of her request that the parties and their son undergo psychological evaluations. But Alaska Rule of Civil Procedure 35(a) allows orders for mental examinations to "be made only on motion for good cause shown." Kristi made her request for psychological evaluations late in the process, raising the issue for the first time at the second evidentiary hearing. She neither demonstrated the need for the evaluations, which would have delayed the proceedings, nor did she establish good cause for the requested evaluations. In any event, she makes only cursory mention of this issue in her statement of points on appeal, and does not

---

[12] Alaska R. Evid. 611(a).

address it at all in briefing.[13] We therefore conclude that the superior court did not abuse its discretion in declining to order psychological evaluations for Christopher, Kristi, and their son.

## V.  CONCLUSION

We AFFIRM the superior court's custody determination.

---

[13]     *See Hagan*, 353 P.3d at 805.