*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| EDITH A., n/k/a EDITH W., | ) |
| | ) Supreme Court No. S-16818 |
| Appellant, | ) |
| | ) Superior Court No. 1JU-08-00802 CI |
| v. | ) |
| | ) O P I N I O N |
| JONAH A., | ) |
| | ) No. 7320 – December 7, 2018 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Louis J. Menendez, Judge.

Appearances: Darryl L. Thompson, Darryl L. Thompson, P.C., Anchorage, for Appellant. Notice of nonparticipation filed by Paul H. Grant, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

A divorced mother and father shared joint legal custody of their son. The mother moved for a modification of legal custody, alleging that the father was failing to cooperate on important issues such as counseling, the selection of a middle school, and medical care; she also moved for a declaratory judgment that the parents did not have to

mediate their custody disputes before filing a modification motion, as required by their custody agreement. The superior court denied the request for declaratory relief and denied the motion for modification of custody without a hearing.

The mother appeals. We agree with the superior court that the motion for declaratory relief was properly denied, as neither party was seeking to enforce the mediation provision and it presented no actual controversy. But we conclude that the mother's allegations in her motion to modify legal custody made a prima facie showing that the parents' lack of cooperation was serious enough to negatively affect the child's well-being, and that the mother was therefore entitled to an evidentiary hearing on modification. We reverse and remand the denial of the modification motion.

## II. FACTS AND PROCEEDINGS

### A. Background Facts And Early Proceedings

Jonah A. and Edith W.[1] were married in 2006 and have a son. Jonah filed for divorce in 2008, and the parties eventually reached an agreement for joint legal custody and alternating weeks of physical custody. The agreement required that the parties mediate any custody disputes.

In April 2015 Edith filed a motion in superior court to modify custody, seeking sole legal and primary physical custody. The superior court denied the motion in June after a six-day hearing involving 14 witnesses and more than 30 hours of testimony. In a written order the court found that the parties were "remarkably unkind, if not hateful, to each other," and that they "do not trust each other and their anger toward the other was almost palpable during their testimony." The court found that the parents' behavior "is bad for [the child] and only causes further emotional and psychological injury." Though not modifying legal or physical custody, the court required Edith and

---

[1] We use pseudonyms for the parties in order to protect their privacy.

Jonah to "minimize contact with each other" and to communicate only by email except in emergencies. The court also ordered that the child continue sessions with a particular therapist "for so long as [the therapist] deems necessary."

In April 2017 Edith filed a motion for contempt, alleging that Jonah had failed to bring the child to therapy as required by prior court orders. The court found that Jonah had not complied and held him in contempt. In July Edith filed a second contempt motion, alleging that Jonah was still failing to bring the child to therapy.

### B. Motions Underlying This Appeal

Also in July 2017, Edith filed a motion that made two requests. First, complaining that Jonah was abusing the mediation requirements contained in the original custody order, the motion sought a declaration from the superior court that "mediation is not [a] condition precedent to moving to modify legal custody." Second, the motion sought a modification of custody whereby Edith would have sole legal custody and authority to make important decisions about the child's health and schooling. Edith cited four areas of conflict demonstrating that continued joint legal custody was unworkable: (1) Jonah's "continued contempt" of the court order requiring the parties to continue the child's therapy; (2) Jonah's "[b]ad faith negotiations . . . in selection of [the child's] middle school"; (3) Jonah's "[l]ack of meaningful and timely engagement with" a psychiatrist the therapist had referred them to for the child's evaluation and treatment; and (4) Jonah's "[l]ack of deference to recommendations of and follow through with [other] health care providers." Edith supported the motion with an extensive affidavit and a number of exhibits, including copies of the email exchanges pertinent to each area of controversy.

Jonah filed an opposition in which he characterized shared legal custody as "stumbl[ing] along" but argued that any change was unnecessary.

In August the superior court held oral argument on the contempt motion, denied the motion on the record, and denied the request for an evidentiary hearing on the modification motion. Later that month the court issued a written order denying Edith's motion for declaratory relief and denying her motion for modification of custody.

Edith now appeals.

## III.   STANDARD OF REVIEW

We review the refusal to grant declaratory relief for an abuse of discretion.[2] We review de novo the denial of the motion to modify custody without a hearing.[3] In this review "we take the moving party's allegations as true."[4] We affirm denial of the motion without a hearing if "the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and so convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing."[5]

## IV.   DISCUSSION

### A.   The Superior Court Did Not Abuse Its Discretion By Denying The Request For Declaratory Relief.

In the parties' original agreement on custody, they stipulated that "should any disagreement arise concerning the interpretation or application of this agreement" they would "first attempt to informally resolve it," then, "before going back to court," they would "participate in at least two sessions with a qualified neutral third-party mediator," asking the court to resolve the issue "[o]nly after mediation fails to produce

---

[2]   *Lowell v. Hayes*, 117 P.3d 745, 750 (Alaska 2005).

[3]   *Abby D. v. Sue Y.*, 378 P.3d 388, 391 (Alaska 2016).

[4]   *Id.* (quoting *Collier v. Harris*, 261 P.3d 397, 405 (Alaska 2011)).

[5]   *Id*. (quoting *Bagby v. Bagby*, 250 P.3d 1127, 1128 (Alaska 2011)).

agreement." Edith's motion requested a ruling that this provision did not preclude her motion to modify custody; she conceded that she was raising the issue "as a preemptive measure," anticipating that Jonah would "attempt to stay [the] motion to modify legal custody [by] claiming [that Edith] must first mediate."

In fact, however, Jonah agreed with Edith that the merits of modification should be addressed by the court. The court accordingly denied declaratory relief as unnecessary "[b]ased on this apparent agreement between" the parents.

Alaska Statute 22.10.020(g) empowers the superior court to "declare the rights and legal relations of an interested party" "[i]n case of an actual controversy." An "actual controversy" is one "admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[6] Here, Jonah's response to Edith's request for declaratory relief — his agreement that mediation was not a necessary first step to Edith's request for modification — demonstrated that there was no "actual controversy" requiring the court's attention at that time. Rather than rule on a hypothetical dispute, the superior court properly exercised its discretion by refusing to issue declaratory relief.

## B. It Was Error To Deny Edith's Motion For Modification Of Legal Custody Without A Hearing.

Edith was entitled to a hearing on her motion to modify legal custody if she alleged facts in support of her motion which, if true, demonstrated a substantial change in circumstances,[7] and which were not "so general or conclusory, and so convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring

---

[6]     *Jefferson v. Asplund*, 458 P.2d 995, 999 (Alaska 1969).

[7]     *Abby D.*, 378 P.3d at 391.

a hearing."**⁸** We have consistently recognized that "joint legal custody is only appropriate when the parents can cooperate and communicate in the child's best interest."**⁹** Thus, "[a] 'continued lack of cooperation' between parents may be a change in circumstances sufficient to justify a modification of custody."**¹⁰**

### 1. The allegations in support of a modification of legal custody

Edith's motion to modify custody — supported by a lengthy affidavit and exhibits — identified three areas that, she argued, showed how the parties' lack of cooperation made joint legal custody unworkable: (1) the child's therapy; (2) the middle school selection process; and (3) "medical issues."

#### a. The child's therapy

The court's June 2016 custody order specifically addressed the parties' obligation to continue the child's therapy with a particular therapist:

> Therapy is to continue with [the therapist] for so long as she deems necessary. The parents shall follow all treatment recommendations or referrals. Neither party is permitted to unilaterally withdraw [the child] from therapy or shift therapy to another therapist.

Edith alleged that the therapist "has consistently recommended weekly, parent supported, therapy sessions between herself and [the child]," but that Jonah emailed Edith in December 2016 informing her that "he would no longer be taking [the

---

**⁸** *Id.* (quoting *Bagby*, 250 P.3d at 1128).

**⁹** *Red Elk v. McBride*, 344 P.3d 818, 823 (Alaska 2015) (quoting *Jaymot v. Skillings-Donat*, 216 P.3d 534, 540 (Alaska 2009)); *accord Cusack v. Cusack*, 202 P.3d 1156, 1161 n.8 (Alaska 2009); *Farrell v. Farrell*, 819 P.2d 896, 899 (Alaska 1991).

**¹⁰** *Riggs v. Coonradt*, 335 P.3d 1103, 1107 (Alaska 2014) (quoting *T.M.C. v. S.A.C.*, 858 P.2d 315, 319 (Alaska 1993)); *see also T.M.C.*, 858 P.2d at 319 ("Sustained noncooperation between the [parents] is grounds for denying joint custody, because lack of cooperation hinders good communication in the best interests of the child.").

child] to see [the therapist] during his weeks" because of "his belief that she was not helping" the child. Edith related the subsequent history: the court had found Jonah in contempt in May 2017 "for unilaterally terminating therapy during his custodial times," but two months later Jonah had "yet to take [the child] to see his therapist"; he declined appointments, failed to respond to suggested dates, and failed to communicate with Edith about alternatives.

In his opposition to Edith's motion, Jonah asserted that he tried unsuccessfully to make a family appointment with the therapist in May; that the therapist said she would inform him if there were any cancellations; that during his two weeks of custody in June, he and the child were out of town; and that the therapist also informed him by email — without copying Edith — that she would "get back with [him] regarding times in July" but did not do so. Jonah said, "The suggestion that I am trying to avoid appointments with [the therapist] is absurd."

### b.     Middle school selection

Edith alleged similar difficulties with "attempting to engage [Jonah] in discussions regarding the selection of a middle school for [the child.]"  She explained that their son had "social and emotional challenges in fifth grade" and would "be entering middle school at an extremely young age," making the choice of a middle school important. She attached copies of the relevant email exchanges in which she first broached the topic of middle school, suggested several schools and programs, and proposed that the parents meet at the open house for one of the schools on April 26 before discussing the best way forward.  Jonah replied that they should postpone any decision until they could mediate the issue.  Edith pointed out that the deadline for submitting optional program applications was nine days away, on April 28; Jonah's response was, "Hi, [Edith], then it is [the public middle school]," adding in a follow-up

email that he would "not provide [his] consent to the other options" and would "contact the other schools to make them aware of this."

An email from Edith a month later explained her further efforts to explore the child's middle school options; she described what she had learned at open houses for a charter school and the public middle school. She explained why she thought the optional programs would be better for their child than a traditional middle school. She informed Jonah that their son was "now first on the wait-list for Charter School" and asked him to allow her to accept a place there if one was offered (parents had 48 hours in which to decide). Jonah responded that "mediation is really where we need to discuss this" and asked her when she had "time in July."

The next communication on the subject was between the parties' lawyers, who were able to resolve it. In his opposition, Jonah attested that their son had been "accepted into the alternative middle school on 7/25/17 as was discussed and agreed to by [Edith] and I through our respective attorneys," that the parties had "worked . . . out" their disagreement, and that it was not "appropriate to spin this success in a negative fashion."

### c. Medical issues

Edith also alleged that Jonah failed to cooperate as necessary for their son's medical care. She alleged that the therapist had made a referral to a child psychiatrist, but that Jonah failed to cooperate in setting an appointment for both parents to meet with him, failed to complete a parent survey the psychiatrist had asked them to fill out and return, failed to attend a follow-up appointment, and failed to discuss the medication the psychiatrist recommended or to consent to its administration. In response, Jonah asserted that it was unproductive for him to be in the same room as Edith during medical appointments, that he had contacted the psychiatrist a number of times by telephone, and that he did not believe he had delayed the child's medication.

Edith also alleged that in the fall of 2016 Jonah accused her "of having a bedbug infestation in [her] home because he observed some red spots on [the child's] back"; he claimed to have incinerated all the clothes the child was wearing. He also asserted that Edith was "sprinkling white dust around," which was causing the child's cough. Edith denied that she had bedbugs or that the cleaning product — which she claimed she used "to reduce dust mites which can be an allergic trigger" — could be causing the child's symptoms; nonetheless, she suggested that they get a doctor's appointment for their son the next week.

According to her emails, Edith got a doctor's appointment for the following Monday — while the child was in Jonah's care — and twice emailed Jonah to confirm that he could attend. Jonah did not reply until the day after the appointment, when he said that he and the child had been unavailable. Edith made an appointment for the next week, during her custody time, when the doctor diagnosed the red marks as "likely eczema caused by dry skin" and the cough as "most likely the remains of a viral respiratory illness but might be due to reflux."

In his response to the motion for modification of custody, Jonah asserted that "[t]he bed bug accusations are ridiculous" and that he "was merely being cautious about [the child's] health." He did not address Edith's allegations that he failed to cooperate in presenting his concerns to a doctor.

Edith alleged one other incident related to the child's medical care. She alleged that in February 2017 the child fell and cut his head, requiring an emergency room visit and stitches. The follow-up "7 day wound check" was scheduled for a week later, during Jonah's custody time. According to Edith, Jonah refused to take the child to the appointment and failed to respond to any of her attempts to communicate with him about the issue for over a week, claiming that he was on jury duty and could not attend

to any emails or texts " 'that might mitigate or compromise' his responsibilities as a juror."

In response to these allegations, Jonah asserted that the child's injuries "were minor and . . . resolved themselves perfectly," that "one of the follow-up appointments was scheduled without [his] knowledge," that another "follow-up appointment shouldn't have happened during [his] week because [the child] was not finished with his medicine regime," and, generally, that "follow-up appointments don't need to be scheduled on the other parent's time."

### 2. The superior court's order

The superior court denied the motion to modify custody without a hearing, finding "no credible argument that there has been a material change of circumstances." Having "reviewed the extensive record in this case," the court concluded that the parents "differ in their approaches to parenting [their son] and meeting his needs," and "neither party is maturely engaging with each other or in this process." It found that the parties had been unable to cooperate since the beginning of the case, and "[t]his inability to resolve issues cordially still continues to create conflict." The court described Edith "as a parent who is very aware of [her son's] needs" and who "seeks an immediate solution" when issues arise, whereas Jonah "appears to be a parent who believes that many issues in childhood are not serious and will likely resolve themselves without parental involvement." It found that neither parenting style was inherently superior to the other.

The court observed that Edith "makes an effort to communicate with" Jonah but, "[u]nfortunately, [Jonah] does not always respond to these efforts in an appropriate and timely manner." The court chided Jonah for sometimes not responding to Edith's emails "for weeks at a time," which was "in no way reasonable." But it concluded that the issues Edith raised in her motion represented "the most [minute] of circumstances." It concluded that none of the issues "involve[d] emergencies" and there was "no

indication that [Jonah] fail[ed] to meet [the child's] physical needs" or that "the parties' conflict negatively affect[ed] [the child]." It concluded that each of the issues simply highlighted the parties' "fundamental disagreement about how to parent" their child.

Addressing Edith's allegation that Jonah was not taking the child to court-ordered therapy, the court noted that she was correct in asserting that Jonah had "not taken [the child] to see [the therapist] on his custodial weeks from December 2016 until the present" (August 2017), a period of nine months. The court called this a "blatant disregard of the court's order." Nonetheless, the court excused Jonah's failures over the preceding three or four months. It accepted his affidavit testimony that he attempted unsuccessfully to make appointments with the therapist in May, thus doing "his utmost to comply with the court's order"; that Jonah was out of town for his two weeks of custody in June and thus "could not have complied with the court's order"; and that as for July, Jonah was waiting for the therapist to contact him, and therefore Jonah could not have knowingly violated the court's order. Crediting Jonah's affidavit testimony, the court concluded that "[Jonah] is now attempting to comply" with the court's order.

With regard to the middle school issue, the court found that each parent's choice of school was reasonable but that both were at fault for the process: Edith because she "severely delayed" in raising the issue with Jonah, and Jonah because his dogmatic response was "incredibly troublesome." But the court again found that because "the issue has now been decided and resolved," this "demonstrates that the parents are able to communicate" sufficiently to maintain joint legal custody.

Addressing Edith's allegations that Jonah failed to cooperate in supporting the therapist's referral to the child psychiatrist, the court noted that Edith's "actions regarding the assessment with [the psychiatrist] were considerable" and that she appropriately "recognized that [Jonah's] input was necessary to this process." He noted that Edith emailed Jonah on June 4, asking for his input on the medication the

psychiatrist recommended, but that Jonah did not respond until over a month later, with "no explanation for this failure." The court noted Edith's allegation that Jonah was barely involved in the process but found this characterization "inaccurate"; again, rather than accepting Edith's allegations as true for purposes of deciding whether to grant a hearing, the court explicitly credited Jonah's affidavit, in which he contended that he *had* been in touch with the psychiatrist by telephone and wanted to avoid being in the same room with Edith for consultations, a preference the court found to "make[] sense." The court concluded that although Jonah's involvement with the psychiatrist was "delayed," both parents were now "engaging in the process," and it did not appear that the child had been harmed.[11]

The court also addressed Edith's allegations that Jonah had failed to take their son to doctors' appointments she scheduled to address the red marks on his back (which Jonah characterized as bedbug bites) and the follow-up inspection of the stitches from the head wound.[12] The court noted that Jonah considered the red marks to be

---

[11] The court stated that it "does not find that [the child] faces a serious risk of harm due to [Jonah's] delayed involvement in the process" and it "does not find that [Jonah's] failure to respond to an email [about the recommended medication] in a timely fashion is of an emergency nature or that it harmed [the child] in any way." It was inappropriate for the court to make findings one way or the other at this stage of the proceedings; an evidentiary hearing may have provided support for those findings of harm the court declined to make.

[12] The court noted that although Edith's allegations that Jonah had accused her of having a bedbug infestation and had burned the child's clothes were "severe," she had "not attach[ed] any emails from [Jonah] which would support the above statements." The supporting emails are in the record as Exhibit J to Edith's motion for modification. In any event, the absence of emails should not have mattered at this stage of the proceedings when, in deciding whether to grant a hearing, the court was required to take as true the allegations of Edith's affidavit, in which she described the exchanges. *Fredrickson v. Hackett*, 407 P.3d 480, 482 (Alaska 2017) (" '[W]e take the moving
(continued...)

serious enough that he contacted the child's therapist to elicit her support for his decision not to return the child to Edith's care, and that the therapist recommended instead that the child "be evaluated by his doctor." The court also noted that Edith immediately made an appointment but that Jonah failed to attend or even timely acknowledge it; yet the court found "[i]t appears that the issue regarding the bed bug bites was resolved in early November 2016" and it "does not appear that [the child's] irritation was an emergency situation which required [Edith] to schedule an appointment on [Jonah's] custodial week." The court also found that Jonah believed the stitches were healing well and the child did not need to attend the follow-up appointment; the court again found that "[Jonah] is able to appreciate [the child's] medical needs," and no harm resulted.

### 3. Our de novo review of Edith's allegations

On de novo review of Edith's allegations in support of her modification motion, we conclude, unlike the superior court, that they show Jonah's unwillingness to cooperate on important questions concerning counseling, schooling, and medical care significant enough to pose a threat to the child's well-being. With regard to the court-ordered therapy, Edith alleged that Jonah was evading all offered appointment times; these allegations were not "so convincingly refuted" by Jonah's affidavit — in which he described the reasons why he had been unable to schedule an appointment for months — "as to create no genuine issue of material fact requiring a hearing."[13]

On the middle school issue, the superior court acknowledged that Edith tried to engage Jonah in a conversation about it, that Jonah's conduct in response was

---

[12]     (...continued)
party's allegations as true' to determine whether the moving party has demonstrated a sufficient change in circumstances to warrant a hearing." (alteration in original) (quoting *Abby D. v. Sue Y.*, 378 P.3d 388, 391 (Alaska 2016))).

[13]     *Id*.

"incredibly troublesome," but that the issue was finally resolved, "demonstrat[ing] that the parents are able to communicate." But the allegations show instead that Jonah resisted even discussing the options, and the issue was eventually resolved only because the parties' lawyers got involved.

With regard to the psychiatrist and the medical appointments for the rash, the cough, and the stitches, we also find Edith's allegations sufficient to demonstrate a serious failure of cooperation on Jonah's part. According to Edith, Jonah failed to cooperate in or support the recommended psychotherapy, including an extended failure to discuss or consent to recommended medication; failed to cooperate in getting medical attention for the child's rash and cough even though he had raised the issues himself and considered them serious enough that he enlisted the therapist's help to keep from returning the child to Edith's care; and failed to take the child in for a scheduled seven-day wound checkup. The fact (the alleged fact, that is) that Jonah's failures caused no serious harm to the child is fortunate but also fortuitous: a parent's failure to cooperate in medical care — *including the sometimes necessary scheduling of medical appointments during the parent's own custody time* — may have serious consequences.

We note that the superior court, in its written decision, referred extensively to findings from an earlier evidentiary hearing in which it questioned the credibility of both parties. To the extent these findings caused the court to favor one party's allegations over the other's while deciding Edith's motion to modify custody, it was error. We generally defer to the superior court's credibility findings,[14] but such findings are rarely appropriate in the context of determining whether a parent moving for modification is entitled to a hearing, when the movant's allegations are to be taken as

---

[14]     *Herring v. Herring*, 373 P.3d 521, 531-32 (Alaska 2016).

true.[15] We addressed this issue in *Collier v. Harris*, in which a mother sought to modify custody several months after a custody trial.[16] Although we agreed with the superior court that the mother had not shown she was entitled to a hearing, we held that the court erred when it based its decision in part on a finding that "the affidavits of [the father were] credible."[17] We noted that "the parties' affidavits contained directly conflicting information" and "the superior court's credibility determinations were premature."[18]

We conclude that Edith's allegations that Jonah failed to engage in discussion or otherwise cooperate on important issues such as counseling, schooling, medication, and other medical care were sufficient to demonstrate a serious lack of cooperation and potential harm to the child's well-being. It was therefore error to deny the motion to modify legal custody without holding an evidentiary hearing.[19]

## V.   CONCLUSION

We AFFIRM the superior court's denial of declaratory relief in the absence of any controversy between the parties. We REVERSE the superior court's denial of Edith's motion for modification of legal custody and REMAND for further proceedings consistent with this opinion.

---

[15]    *See Fredrickson*, 407 P.3d at 482.

[16]    261 P.3d 397, 403-05 (Alaska 2011).

[17]    *Id.* at 404.

[18]    *Id.* at 405.

[19]    Because of our disposition of this case, we need not address Edith's argument that the denial of a hearing violated her due process rights. *See Alaska Fish & Wildlife Conservation Fund v. State*, 347 P.3d 97, 102 (Alaska 2015) ("If 'a case may be fairly decided on statutory grounds or on an alternative basis, we will not address the constitutional issues.' " (quoting *Wilber v. State, Commercial Fisheries Entry Comm'n*, 187 P.3d 460, 465 (Alaska 2008))).